CEDAR CHEMICAL COMPANY, Zurich American Insurance Company, and Crawford and Company *v.* Jimmy T. KNIGHT

07-307                                    273 S.W.3d 473

Supreme Court of Arkansas
Opinion delivered January 31, 2008

*Rieves, Rubens, & Mayton,* by: *Michael R. Mayton* and *Michael C. Stiles,* for appellants.

*Charles P. Allen,* for appellee.

DONALD L. CORBIN, Justice. This is an appeal from a decision of the Arkansas Workers' Compensation Commission awarding disability benefits to Appellee Jimmy T. Knight. Appellants are Knight's former employer, Cedar Chemical Company, and the employer's insurance carriers, Zurich American Insurance Company and Crawford and Company.[1] On appeal, Appellants argue that the Commission erred in awarding Appellee benefits as there was insufficient evidence to establish that he suffered a compensable injury. This case is now before us on a petition for review, *see Cedar Chemical Co. v. Knight,* 99 Ark. App. 162, 258 S.W.3d 394 (2007), thus, our jurisdiction is pursuant to Ark. Sup. Ct. R. 2-4(c)(2). We affirm the decision of the Commission.

The record reveals that on July 1, 2001, Appellee, who was working a twelve-hour shift, was descending a flight of stairs when he noticed pain in his left knee. According to Appellee, it was approximately 11:00 a.m. when he noticed the pain, although he could not identify any specific incident that caused the pain. Appellee, who had been employed with Cedar for approximately five years at the time of this incident, was responsible for various job duties involved in formulating and manufacturing certain

---

[1] The Death and Permanent Disability Fund, while a party below, did not file a brief on appeal.

chemical products. These job duties required Appellee to ascend and descend up to three flights of stairs throughout the day.

After first noticing the pain, Appellee continued with his job duties until approximately 2:00 p.m., when he took a thirty-minute lunch break. At the end of his break, Appellee tried to stand up and realized he could not put much weight on his left leg. Appellee then called his supervisor, Jimmy Vincent, and reported that he had hurt his knee, could not walk on it, and asked if he could go home. Vincent asked him if he could stay until the end of his shift, and Appellee agreed.

The next day, Appellee notified his supervisor that he remained in pain and was going to see his family physician. An X-ray was taken of his knee, and the radiologist's report stated: "Features consistent with gout and/or osteoarthritis with evidence for calcification ligamentous structures with other features as described which may or may not be related to trauma. History is pain." Appellee's physician referred him to an orthopedist, Dr. John Wilson. An MRI of his knee was performed on July 3, 2001. The resulting report revealed: "Probable complete disruption of the anterior cruciate ligament. Probable tear and maceration of the posterior horn of the medial meniscus." On July 5, 2001, Dr. Wilson noted in Appellee's chart, "The MRI revealed a posterior horn tear of the medial meniscus as well as an anterior cruciate tear. Mr. Knight needs an arthroscopy."

Because Appellee was unsure whether he wanted to have surgery, he sought a second opinion from Dr. Frederick Azar. Initially, Dr. Azar recommended that Appellee engage in exercise and physical therapy to ease the pain. After two weeks, however, Dr. Azar recommended that Appellee undergo an arthroscopy. Appellee underwent a left knee arthroscopy performed by Dr. Herbert Hahn on October 17, 2001. Subsequent to his surgery, Appellee developed a postoperative sepsis of his left knee with staph aureus. The postoperative infection required Appellee to be hospitalized from October 25, 2001, until November 19, 2001, and also required him to undergo two surgical debridements.

Appellee sought workers' compensation benefits as a result of his injury. A hearing on the issue of the compensability of Appellee's claim was held before an Administrative Law Judge on January 7, 2005. The ALJ entered a written order, finding that Appellee's injury was idiopathic in nature and, as a result, there was insufficient evidence to prove Appellee sustained a compensable

injury arising out of and in the course and scope of his employment.

Appellee appealed the ALJ's decision to the full Commission. On March 14, 2006, the Commission entered an order reversing the decision of the ALJ. In so doing, the Commission found that Knight's injury had resulted from a specific incident arising out of and in the course of his employment with Cedar.

Appellants appealed the decision of the Commission to the Arkansas Court of Appeals. The court of appeals affirmed the decision of the Commission, finding that there was substantial evidence to support the Commission's decision that Appellee suffered a compensable injury. Appellants sought rehearing, and an en banc panel affirmed in a substituted opinion. Appellants then petitioned this court for review. When we grant a petition for review, we treat the appeal as if it were filed in this court originally. *Tucker v. Roberts-McNutt, Inc.*, 342 Ark. 511, 29 S.W.3d 706 (2000). We now turn to the merits of the present appeal.

On appeal, Appellants argue that there was no substantial evidence to support the Commission's determination that Appellee's injury was a work-related compensable injury.[2] Specifically, Appellants argue that the evidence demonstrated that Appellee could point to no specific incident that could have caused the injury and, moreover, that the medical evidence pointed to degenerative changes in the knee prior to July 1. Thus, according to Appellants, the Commission's decision that Appellee's injury was compensable was arbitrary and capricious, and should be reversed.

Appellee counters that there was substantial evidence to support the Commission's finding of a compensable injury, as the evidence demonstrated that he had no prior problem with his knee when he began his shift on July 1 and that the problem occurred only after he ascended and descended the stairs at work several times. Moreover, Appellee argues that where a claimant suffers an unexplained injury at work, it is generally compensable.

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if

---

[2] Originally, Appellee claimed that his injury was compensable as a gradual-onset injury, but he subsequently withdrew such a claim.

the decision is supported by substantial evidence. *Jivan v. Economy Inn & Suites*, 370 Ark. 414, 260 S.W.3d 281 (2007). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.*

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 202 S.W.3d 519 (2005).

A compensable injury is defined, in part, as an accidental injury "arising out of and in the course of employment." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed." Ark. Code Ann. § 11-9-102(4)(B)(iii) (Repl. 2002). This court has held that an employee is performing "employment services" when he or she "is doing something that is generally required by his or her employer." *Kimbell v. Association of Rehab Indus.*, 366 Ark. 297, 301, 235 S.W.3d 499, 503 (2006) (quoting *Wallace v. West Fraser South, Inc.*, 365 Ark. 68, 72, 225 S.W.3d 361, 365 (2006)). We must determine whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *Id.* at 301-302, 235 S.W.3d at 503 (quoting *Wallace*, 365 Ark. at 72, 225 S.W.3d at 365). As the claimant, Appellee bears the burden of proving a compensable injury by a preponderance of the credible evidence. *See* Ark. Code Ann. § 11-9-102(4)(E)(i) (Repl. 2002).

In the hearing before the ALJ, Appellee testified that he began working for Cedar in 1996, and that at the time of this incident, he worked in a unit responsible for making a chemical used in Stam and Propanyl. He further explained that his unit

consisted of three levels, with steps leading to each level. Appellee explained that he performed various job duties, and that on a normal day, he would travel from the ground floor to the third floor anywhere between five to eight times while working a twelve-hour shift. Appellee testified that in the middle of May 2001, he was walking up some steps when he felt his knee hyperextend and pop and also felt pain in his back. He continued to work and later told his supervisor there was no need to file an accident report as he was not in pain. Appellee reported no further problems following this incident. Then, on July 1, 2001, Appellee reported to work for his twelve-hour shift that began at 7:00 a.m. At approximately 11:00 a.m., Appellee noticed pain in his knee as he was going down some stairs at work. He continued to work until approximately 2:00 p.m., when he took a thirty-minute lunch break. At the end of the break, Appellee stated that he was unable to put much weight on his leg and had to use a bicycle to steady himself. He reported the pain to his supervisor, but finished his shift.

Shirley Knight, Appellee's wife, testified that when her husband left for work on July 1 everything was normal, but when he returned that evening, he needed assistance to ascend the steps at their back door.

In granting Appellee benefits, the Commission opined as follows:

> In the present matter, the claimant credibly testified that he experienced an onset of pain in his knee while coming down the steps of his assigned unit some time around 11:00 a.m. Thereafter, the claimant's pain got progressively worse, as he could hardly stand or get up from his seat after taking his lunch break. A subsequent MRI revealed that the claimant had preexisting degenerative disease and a torn medial meniscus in his left knee. In a letter dated October 16, 2002, Dr. Hahn opined that the claimant's torn medial meniscus resulted from his recent work injury.
>
> Considering Dr. Hahn's expert opinion and in light of the claimant's credible account of the incident, the Full Commission finds that there is insufficient evidence to support a finding that the injury suffered by the claimant was personal in nature, as it was caused while descending the steps of his unit. We therefore find that the claimant's knee injury was not personal in nature nor did it result due to his degenerative disease but was a compensable specific-incident workplace injury, which arose out of and in the course of his employment.

Based on our *de novo* review of the entire record, the Full Commission finds that the claimant proved that he sustained a compensable injury to his left knee on July 1, 2001, which arose out of and in the course of his employment with the respondent. Therefore, we reverse the opinion of the administrative law judge.

■ Notably, the Commission found Appellee's testimony credible that he had an onset of pain while working his shift on July 1. As previously stated, the Commission is the sole arbiter of credibility. In light of the Commission's credibility determination and reliance on Dr. Hahn's expert opinion regarding Appellee's acute injury, we cannot say that reasonable minds could not have reached the same conclusion as the Commission.

We disagree with Appellants' claim that *Crawford v. Single Source Transportation*, 87 Ark. App. 216, 189 S.W.3d 507 (2004), relied upon by the Commission and Appellee, is distinguishable. There, the claimant was injured when he stepped out of his cement truck, down two steep steps, and onto an oil field. As his foot reached the ground, the appellant's knee gave way or buckled, causing the appellant to fall to the ground and to feel pain in his knee. The appellant subsequently had surgery on his knee that revealed he had a tear of the medial meniscus and osteoarthritis in his knee. The Commission denied benefits, but on appeal the court of appeals held that the appellant's injury was neither idiopathic nor unexplained, but rather was a specific-incident injury. In so holding, the court of appeals noted that the injury was not simply personal in nature where it was caused while he attempted to exit his employer's vehicle from an elevated position and such employment conditions contributed to his accident. *Id.* The court of appeals further noted that the appellant's injury was not unexplainable because his testimony fully explained the circumstances surrounding his fall. *Id.*

■ Just as in *Crawford*, Appellee gave a detailed account of his actions preceding the onset of his pain. Specifically, he testified that he had traveled probably two times to the third floor and six or eight times to the second floor before 11:00 a.m. This was not a case where Appellee had to occasionally walk up or down some steps, as Appellants suggest. We simply cannot say that the Commission erred in determining the injury was not personal in nature to Appellee. An idiopathic injury is one whose cause is personal in nature, or peculiar to the individual. *See Kuhn v. Majestic Hotel*, 324 Ark. 21, 918 S.W.2d 158 (1996); *Little Rock Convention & Visitors*

*Bureau v. Pack*, 60 Ark. App. 82, 959 S.W.2d 415 (1997). This court has recognized that injuries sustained due to an unexplained cause are different from injuries where the cause is idiopathic. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998). Where a claimant suffers an unexplained injury at work, it is generally compensable. *Pack*, 60 Ark. App. 82, 959 S.W.2d 415. Simply because Appellee's injury is unexplained does not render it noncompensable.

We also disagree with Appellants' assertion that this case is analogous to *Hapney v. Rheem Manufacturing Co.*, 342 Ark. 11, 26 S.W.3d 777 (2000). In that case, this court rejected a claimant's contention that her neck injury was compensable as a specific-incident injury under section 11-9-102(4)(A)(i). In rejecting her claim, this court noted that the claimant, in her deposition, did not know how she was injured nor could she recall anything specific happening that caused the injury. In addition, this court pointed out that the claimant never reported to her physician that her pain was associated with any particular, specific incident.

Again, here, we have a case where Appellee described in detail his job duties and the events surrounding the onset of his pain. The Commission determined this testimony to be credible. In addition, there was an expert opinion from Dr. Hahn that Appellee's acute injury was responsible for more than fifty percent of Appellee's impairment.

Finally, we are mindful that the court of appeals recently addressed the issue of whether a claimant had proven that he suffered a compensable injury under section 11-9-102(4)(A)(i) in *Weaver v. Nabors Drilling USA*, 98 Ark. App. 161, 253 S.W.3d 30 (2007). In *Weaver*, the claimant was "mixing mud" while at work when he started to feel his hands "tingling" or "burning." A couple of days later, the claimant sought medical treatment. An MRI revealed mild disc herniation at C5-6 interspace and C6-7 interspace. The claimant sought compensation benefits for a specific-incident injury. The Commission denied his claim on the basis that he failed to present proof of a specific incident that caused the tingling or burning in his hands. In affirming the Commission, the court of appeals held:

> While we may have reached a different conclusion if we tried the facts, we must affirm the Commission's decision if substantial evidence supports it, and in this case it does. Weaver failed to prove his case. He only proved that he had an injury and that he felt pain

> while at work — he failed to show that a specific incident occurred at work. He asks this court to infer that his injury was caused by his employment — something we are not permitted to do.

*Id.* at 163–64, 253 S.W.3d at 32–33.

*Weaver,* however, is not applicable to the present case. First, the procedural posture of *Weaver* was completely different upon appellate review. Here, we have a case where the Commission, as the sole arbiter of credibility, determined Appellee's testimony in favor of a finding of compensability to be credible. Also notable is the fact that Appellee's testimony regarding his job duties and the requirement that he ascend and descend multiple flights of stairs repeatedly over the course of a twelve-hour shift was much more detailed and supports a conclusion that his injuries were compensable as a specific-incident workplace injury. Accordingly, we affirm the decision of the Commission.

Commission affirmed; court of appeals affirmed.

IMBER, J., dissents.

ANNABELLE CLINTON IMBER, Justice, dissenting. The majority's decision that Knight suffered a specific-incident compensable injury stands in stark contrast to our prior case law on the subject. By concluding that Knight's onset of pain, which was not accompanied by an identifiable accident, was an incident-specific injury, the majority ignores the statutory distinction between incident-specific injuries and gradual onset injuries. *See* Ark. Code Ann. § 11-9-102 (Repl. 2002). Moreover, the majority's futile attempt to distinguish our case law is not persuasive. Accordingly, I must respectfully dissent.

Arkansas Code Annotated § 11-9-102(4)(A)(i) (Repl. 2002) defines a "compensable injury" as,

> An *accidental injury* causing internal or external physical harm to the body or accidental injury to prosthetic appliances, including eyeglasses, contact lenses, or hearing aides, *arising out of and in the course of employment* and which requires medical services or results in disability or death. *An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence.*

*Id.* (emphasis added). Thus, in accordance with the plain language of the statutory provision, this court and the court of appeals have

concluded that an injury is "accidental" only if it is caused by a specific incident of trauma. *See, e.g., Kimbell v. Assoc. of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006) (claimant fell from a porch while talking to a client of the center); *Swaim v. Wal-Mart Assoc., Inc.*, 91 Ark. App. 120, 208 S.W.3d 837 (2005) (claimant felt a pop in his foot while he was pulling a heavily loaded pallet); *Crawford v. Single Source Transp.*, 87 Ark. App. 216, 189 S.W.3d 507 (2004) (claimant experienced a flexion of his knee while he was descending from his truck).

In subsection (ii) of section 11-9-102(4)(A), the Arkansas General Assembly expressly designates as compensable certain types of injuries not caused by a specific incident, or not identifiable by time and place of occurrence. *See* Ark. Code Ann. § 11-9-102(4)(A) (Repl. 2002). Such gradual onset injuries are compensable only if the injury is (a) caused by rapid repetitive motion, (b) a back or neck injury, or (c) hearing loss. *See* Ark. Code Ann. § 11-9-102(4)(A)(ii). Again, there is no ambiguity in the statutory language. The only injuries that have been defined as compensable by the legislature are as follows: accidental injuries, gradual injuries of three specific types, mental illness, cardiovascular disease, hernias, and adverse reactions experienced by certain employees to vaccinations for smallpox. *See generally* Ark. Code Ann. § 11-9-102(4) (Repl. 2002). While there may be a category of injury which has not been included in the statutory definition of compensability, such as a nonback, nonhearing-loss, nonrepetitive-motion injury that is not caused by a specific incident but that is otherwise identifiable by time and place of occurrence, the Commission and the courts are mandated to construe the provisions of the Workers' Compensation Act strictly. Ark. Code Ann. § 11-9-704(c)(3) (Repl. 2002). Moreover, the legislature has expressly declared that:

> [T]he extent to which any physical condition, injury or disease should be excluded from or added to coverage . . . shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.

Ark. Code Ann. § 11-9-1001 (Repl. 2002).

By construing the statute strictly it is clear that the legislature intended to differentiate between accidental injuries, which involve a specific incident, and gradual onset injuries that are

compensable even though "not caused by a specific incident" or "not identifiable by time and place of occurrence." *See* Ark. Code Ann. § 11-9-102(4)(A)(ii)(b)&(c). This distinction was illustrated by our court's decision in *Hapney v. Rheem Manufacturing*, 342 Ark. 11, 26 S.W.3d 777 (2000). The claimant in that case was an assembly-line worker who suffered from a herniated disc in her cervical spine that she claimed was an incident-specific, workplace injury. *Id.* The claimant's job required her to attach metal plates to air conditioning units, and she testified that she had to bend her neck six times with each unit, resulting in her bending almost 1,800 times during a shift. *Id.* The claimant alleged that while she was performing her job duties, she began to feel pain in her neck and right arm, but she was able to complete her shift. *Id.* The pain progressively worsened and the claimant sought medical treatment. *Id.* Although the claimant contended that her injury was the result of a specific incident at work, she admitted that she did not know how she was injured and she did not recall anything specific happening. *Id.* Accordingly, we held that the claimant's own words belied her argument that the injury was caused by a specific, identifiable incident. *Id.*

Likewise, in the recent case of *Weaver v. Nabors Drilling USA*, 98 Ark. App. 161, 253 S.W.3d 30 (2007), the Arkansas Court of Appeals affirmed a denial of workers' compensation benefits when the claimant asserted that his spinal injury was linked to his work. *Id.* In that case, the claimant began complaining of pain in his hands while he was "mixing mud" at work but was unable to define a specific incident that caused his condition. *See id.* In doing so, the appellate court specifically rejected the claimant's argument that while he could not prove a specific incident, his work was the only logical cause of his injury. *See id.* Again, as in *Hapney*, the court concluded that the claimant had only proven that he felt pain while at work but had not shown evidence of a specific incident that occurred at work and resulted in his injury.[1] *Id.*

Despite the majority's statement to the contrary, the instant case is indistinguishable from *Hapney* and *Weaver*. Here, Knight testified that he began feeling pain while he was descending the

---

[1] The majority tries to distinguish *Weaver* by pointing out that the Commission denied benefits to the claimant in *Weaver*, and, thus, the appellate court simply had to affirm the Commission's findings under our deferential standard of review. While the Commission may be insulated to a certain degree, it may not arbitrarily disregard evidence that supports the denial of a claim. *See Kimbell v. Assoc. of Rehab Indus. & Bus. Companion Prop. & Cas.*, *supra*.

stairs as part of his job duties. He was able to continue working, but his pain gradually increased until he felt unable to work and sought medical attention. Like the claimants in *Hapney* and *Weaver*, Knight admitted in his own testimony before the ALJ that he did not know the cause of his injury, and he could not identify a specific incident that resulted in his injury. Although, as the majority points out, Knight gave a specific description of his activities at the time he felt pain in his knee, namely he was walking up and down stairs at work, he could not specify an incident that occurred while he was descending the stairs that day. Specifically, he admitted that he neither tripped or fell preceding the pain, nor did he feel a pop or flexion in his knee, or anything else identifiably related to the onset of his pain.

The majority also relies upon our past holding that unexplained injuries are compensable. As a general principle, this proposition is correct, but the majority's reasoning in applying it to the instant case is flawed. What the majority fails to recognize is that the "unexplained" injuries in those cases had an unexplainable root cause, but the claimants in those cases still experienced specific, identifiable incidents that occurred at work and ultimately resulted in their injuries. *See, e.g., Kimbell v. Assoc. of Rehab Indus. & Bus. Companion Prop. & Cas., supra* (claimant fell from porch due to unexplained dizziness); *Little Rock Convention & Visitors Ctr. v. Pack*, 60 Ark. App. 82, 959 S.W.2d 415 (1997) (claimant fell while caulking a walkway); *Moore v. Darling Store Fixtures*, 22 Ark. App. 21, 732 S.W.2d 496 (1987) (claimant fell and blacked out after stepping off a forklift). In the instant case, however, Knight did not experience an "unexplained" injury that resulted from a specific incident; rather, he simply experienced an onset of pain while at work and did not offer any proof that it was related to a specific incident.

Moreover, the majority contends that *Crawford v. Single Source Transportation*, 87 Ark. App. 216, 189 S.W.3d 507 (2004), controls the outcome of this case. I disagree. In that case, the claimant described an incident where he stepped from his truck, his knee buckled, he fell to the ground, and then he felt pain in his knee. *See id.* The only similarity between *Crawford* and the instant case is that the *Crawford* claimant was descending from his truck and Knight was descending the stairs immediately preceding the onset of pain. *See id.* While the claimant in *Crawford* was able to identify a specific incident that led to his injury, namely, his knee

buckled as he stepped from the truck, the claimant here failed to identify any specific incident that caused his injury.

Actually, the outcome of this case should be governed by *Whitten v. Edward Trucking/Corp. Solutions*, 87 Ark. App. 112, 189 S.W.3d 82 (2004), a case in which the court of appeals held the claimant's injury to be idiopathic. The claimant in *Whitten* suddenly felt a pain in his back as he was ascending the stairs to his supervisor's office. *Id.* As the court of appeals stated, "[h]e neither tripped or stumbled, nor was he carrying anything heavy at the time of the fall." *Id.* at 115, 189 S.W.3d at 84. A medical examination of the claimant revealed that he suffered from three preexisting injuries, which could have caused his pain. *Id.* Accordingly, the Workers' Compensation Commission determined that his injury was idiopathic in nature. *Id.* Here, Knight was descending the stairs when he felt pain in his knee, and like the claimant in *Whitten*, he did not trip or stumble, and he was not carrying anything heavy. Also like the claimant in *Whitten*, Knight had suffered a previous injury to his knee; whereas the claimant in *Crawford* had not sustained any prior injuries.

I simply cannot accept the majority's strained attempt to distinguish our case law, when Knight wholly failed to prove that his injury resulted from a specific incident. The majority's decision today jettisons strict construction as mandated by the legislature and completely ignores the statutory provision that "[a]n injury is 'accidental' *only* if it is caused by a specific incident *and* is identifiable by time and space of occurrence." Ark. Code Ann. § 11-9-102(4)(A)(i) (emphasis added). For the first time, this court holds that the onset of pain is a specific-incident injury under Ark. Code Ann. § 11-9-102. For the above stated reasons, I respectfully dissent.