2011 Ark. App. 751

**John PEARSON, Appellant**

v.

**WORKSOURCE and Wausau Insurance Company, Appellees.**

**No. CA 11–542.**

Court of Appeals of Arkansas.

Dec. 7, 2011.

Rehearing Denied Jan. 11, 2012.

Eddie H. Walker, Jr. and James A. Arnold, II, Fort Smith, AR, for appellant.

Rebecca Dawn Hattabaugh, Fort Smith, AR, for appellee.

JOHN B. ROBBINS, Judge.

Appellant John Pearson brought a workers' compensation claim against appellees Worksource and Wausau Insurance Company, claiming that he sustained a compensable injury to his left great toe during his employment for Worksource. The Workers' Compensation Commission denied the claim on the basis that Mr. Pearson failed to prove a compensable injury. The Commission found that Mr. Pearson failed to prove an accidental injury caused by a specific incident identifiable by time and place of occurrence, and that he also failed to prove an injury caused by rapid repetitive motion. Mr. Pearson now appeals from the Commission's order denying compensability, arguing that its decision is not supported by substantial evidence. We agree with appellant's argument that the Commission erred in finding that the injury was not the result of rapid repetitive motion, and we reverse and remand.

Arkansas Code Annotated section 11–9–102(4)(A) (Supp.2011) defines "compensable injury" and provides, in relevant part:

(4)(A) "Compensable injury" means:

(i) An accidental injury causing internal or external physical harm to the body or accidental injury to prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence;

(ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is:

(*a*) Caused by rapid repetitive motion.

We review a decision of the Workers' Compensation Commission to determine whether there is substantial evidence to support it. *Rice v. Ga.-Pac. Corp.*, 72 Ark.App. 148, 35 S.W.3d 328 (2000). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Geo Specialty Chem. v. Clingan*, 69 Ark.App. 369, 13 S.W.3d 218 (2000). It is the Commission's province to weigh the evidence and determine what is most credible. *Minn. Mining & Mfg. v. Baker*, 337

Ark. 94, 989 S.W.2d 151 (1999). When the Commission denies a claim, we must affirm if the Commission's decision displays a substantial basis for the denial of relief. *Crudup v. Regal Ware, Inc.*, 341 Ark. 804, 20 S.W.3d 900 (2000).

The medical history presented at the hearing showed that Mr. Pearson, who is now in his early 40s, was diagnosed with diabetes in 1995. Mr. Pearson has had some previous problems with his left foot. In 1999, Mr. Pearson received emergency treatment for [3]complaints of pain, redness, and swelling in his left foot, and was assessed with "cellulitis foot." A physician's report from 2006 noted that Mr. Pearson's diabetes was not being controlled and the assessment was "cellulitis of the left lower extremity in a diabetic patient."

Mr. Pearson testified that he was working for Worksource on June 8, 2009, and wearing a pair of steel-toe work boots provided by his employer. He stated that his left great toe was not sore that morning when he began his work, but that a couple of hours later it became a little sore and started bothering him. Mr. Pearson finished the work day, and when he got home he took off his boots and noticed a blister on his toe. He stated, "I guess from being on my feet and walking and stuff and my feet sweating and everything, the edge of the steel toe was rubbing where the blister developed." Mr. Pearson stated that he knew his toe was rubbing against the boot because he could feel it pressing against the side of his foot.

Mr. Pearson described his job duties as follows:

> My job duties that day were to bring the steel out in big bundles, out to the north yard, and it was our job to take this fiberglass blanket and cover it up so the metal would cool slowly. Depending on where they set the big bundles of steel down at, you walk from one end of the field to the other and cover up ones that come out and uncover the ones that have reached their time limits. I did that walking all day back and forth over and over.
>
> . . . .
>
> I moved my foot over and over in order to walk from place to place. I was working within a time frame for getting my work done. As it comes out, we have to cover it as fast as possible, so if we are at this end and it was down at the other end, you would have to hot step it, walk fast. I did that same work over and over again all through the day.

Mr. Pearson testified that he told his employer's representative about the blister on his toe and asked about getting a wider pair of boots. The representative advised Mr. Pearson [4]that they did not have a wider pair of boots and asked him to get another pair on his own. Mr. Pearson indicated that he would not be able to get a new pair of boots until he received a paycheck, which was not for a couple of weeks. Mr. Pearson continued to work his regular duties in the same pair of boots for the next several days, and his toe continued to bother him.

Mr. Pearson saw Dr. James Saunders for a regular diabetes checkup on June 17, 2009. After that visit, Dr. Saunders reported:

> He developed an ulceration on his medial left big toe from using work boots. It had some purulent discharge but he has been using topical antibiotic ointment and the redness and swelling have decreased in the last couple of days.... He began working again, and says overall he feels good.

Dr. Saunders' assessment was diabetic peripheral neuropathy type II and cellulitis of the toe.

Mr. Pearson continued to work for Worksource and continued having a problem with his toe, and Worksource sent him to Dr. Terry Clark on July 30, 2009. Dr. Clark reported:

> This is a 42–year–old who has been working with some steel toed boots that according to him were too narrow. He developed a 'blood blister' on his left great toe. Since then the toe has become more reddened and swollen. He has developed an ulcer on the toe that he states has been draining purulent material. His discomfort reaches a 7 on the pain scale. He is an insulin dependent diabetic but he has continued to work in steel boots. He denies pain or injury elsewhere.

Dr. Clark gave the impression of "diabetic ulcer and cellulitis of left great toe," and he cleaned and bandaged the toe. Dr. Clark returned Mr. Pearson to work with restrictions that he alternate standing, sitting, and walking as tolerated with no pressure on the great toe.

Mr. Pearson was referred by Dr. Clark to a podiatrist, Dr. John Wright, and then came under the care of Dr. Travis Goodnight. Dr. Goodnight diagnosed left toe osteomyelitis and abscess, and he performed surgery on August 21, 2009. The surgery was successful, and Dr. Goodnight returned Mr. Pearson to light duty beginning on September 21, 2009, as long as he could perform work that allowed him to stand no longer than thirty minutes at a time. Mr. Pearson subsequently changed jobs and began working at a Waffle House restaurant, and on October 29, 2009, Dr. Goodnight reported that the left diabetic toe wound had healed well.

In this appeal, Mr. Pearson argues that the Commission's determination that he failed to prove a compensable toe injury was not supported by substantial evidence, and that we should reverse and remand with instructions to award appropriate benefits. Mr. Pearson contends that, contrary to the Commission's findings, the evidence established that he sustained the toe injury during a specific incident at work. Alternatively, Mr. Pearson claims that he proved a compensable gradual-onset injury caused by rapid repetitive motion.

In support of his argument that he sustained a compensable injury caused by a specific incident identifiable by time and place of occurrence, Mr. Pearson relies on *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008). In that case, the Commission found that the claimant sustained a compensable torn ligament in his knee as a result of a specific incident arising out of and in the course of his employment. The testimony showed that the claimant felt pain while walking down some stairs at work and that the pain progressively worsened. The claimant ultimately underwent surgery on his knee, and the supreme court affirmed the Commission's finding of compensability and award of benefits. The supreme court held that simply because the claimant's injury was unexplained did not render it noncompensable. In light of the Commission's credibility determination and reliance on the surgeon's expert opinion that the claimant sustained an acute work injury, the supreme court could not say that reasonable minds could not have reached the Commission's decision.

In the present case, Mr. Pearson notes that the blister on his toe developed within a couple hours of working on June 8, 2009. He contends that because the injury manifested itself over a brief period of time as was the case in *Cedar Chem. Co., supra,* the injury was the result of a specific incident.

In the alternative, if the injury was not caused by a specific incident, Mr. Pearson

contends that it was caused by rapid repetitive motion, which is a statutory requirement for establishing a compensable gradual-onset injury such as this one. *See* Ark.Code Ann. § 11–9–102(4)(A)(ii)(*a*) (Supp.2011). Mr. Pearson relies on two cases. In *Boyd v. Dana Corp.,* 62 Ark. App. 78, 966 S.W.2d 946 (1998), we held that the claimant's series of repetitive motions performed 115 to 120 times per day separated by periods of only 1.5 minutes constituted rapid repetitive motion under the statute. In *High Capacity Prods. v. Moore,* 61 Ark.App. 1, 962 S.W.2d 831 (1998), we held that where there was testimony that the appellee's assembly duties required her to ensure one nut to be put in place on an average of every fifteen seconds during the majority of her shift, there was substantial evidence to support the Commission's award for a rapid repetitive injury.

In the case at bar, Mr. Pearson's testimony reflects that his employment at Worksource required him to walk quickly from one end of the field to the other covering and uncovering bundles of steel. He said he did that same work throughout the day, and that it required him to walk back and forth over and over, covering the bundles as fast as possible when they came out. Although there was no evidence of any exact time frame for performing his duties, Mr. Pearson submits that it is reasonable to conclude that his job was performed at a quick, rapid pace and was also repetitive. He contends that both the motion of his left foot and the motion of his toe rubbing against the boot were rapid and repetitive. Because the Commission erroneously concluded otherwise, Mr. Pearson contends that its decision must be reversed.

We hold that the Commission's opinion displays a substantial basis to support its conclusion that Mr. Pearson failed to prove a compensable injury caused by a specific incident identifiable by time and place of occurrence. This case is distinguishable from *Cedar Chem. Co., supra,* because in that case the claimant experienced an onset of pain while descending some steps and his treating physician gave the opinion that his torn knee ligament was the result of an acute injury. By contrast, Mr. Pearson's treating physicians reported no acute event but rather indicated that he developed an injury to his toe by working in work boots that were too narrow. Mr. Pearson testified that he did not feel any soreness until he had been working his regular duties for a couple of hours. Under such circumstances, the Commission could reasonably conclude that there was no specific incident causing the toe injury, but instead that the blister developed gradually over a significant period of time.

However, we agree with Mr. Pearson's argument that the Commission erred in concluding that his walking duties at work did not constitute rapid repetitive motion. In analyzing whether an injury is caused by rapid repetitive motion, the standard is two-pronged: (1) the task must be repetitive, and (2) the repetitive motion must be rapid. *Galloway v. Tyson Foods, Inc.,* 2010 Ark. App. 610, 378 S.W.3d 210. In this case it is clear that Mr. Pearson's duties were repetitive in that he was required to walk back and forth across a field over and over all day long. We hold that this repetitive motion met the requirement of being rapid as well. While Mr. Pearson did not relate exactly how many steps he took between bundles or the exact pace at which he was required to walk, he testified that he was required to cover the bundles as quickly as possible and had to walk fast from one end of the field to the other. The Commission did not discredit this testimony. The only reasonable con-

clusion is that this fast-paced repetitive walking caused a blister as a result of the rapid motion of the ill-fitting boots rubbing against his toe.

Because the Commission erred in finding that Mr. Pearson failed to prove a gradual-onset injury caused by rapid repetitive motion, we reverse and remand to the Commission for further fact-finding as to whether Mr. Pearson proved the remaining necessary elements for a compensable injury. In particular, the Commission will have to determine, pursuant to Ark.Code Ann. § 11–9–102(4)(E)(ii) (Supp. 2011), whether the alleged compensable injury was the major cause of the disability or need for treatment.

Reversed and remanded.

GLADWIN and HOOFMAN, JJ., agree.