Cite as 2020 Ark. App. 366

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-20-78

|  |  |
|---|---|
| | **Opinion Delivered** September 2, 2020 |
| LEROY CALHOUN<br>APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION |
| V. | [NO. G600346] |
| AREA AGENCY ON AGING OF SOUTHEAST ARKANSAS<br>APPELLEE | REVERSED AND REMANDED |

## BRANDON J. HARRISON, Judge

Leroy Calhoun appeals the decision of the Arkansas Workers' Compensation Commission (the Commission) that reversed the administrative law judge (ALJ) and found that he had not proved that he was entitled to wage-loss disability in the amount of 60 percent. Calhoun asserts that the Commission erred in finding that his employer, the Area Agency on Aging (AAA), had extended a bona fide offer of employment. We agree with Calhoun, reverse the Commission's decision, and remand for an award of benefits.

On 13 January 2016, Calhoun was a part-time employee of AAA delivering meals as part of the Meals on Wheels program. On that day, he was involved in a motor-vehicle accident in which the van he was driving overturned. Calhoun sustained multiple injuries including "a fractured neck (C1 through C3) with temporary paralysis, closed head injury to the scalp, blunt chest trauma with a collapsed lung, and abdominal injuries." He underwent surgery for his neck injury and extensive physical rehabilitation.

Dr. Thomas Kiser declared Calhoun at maximum medical improvement (MMI) on 27 February 2017 and recommended yearly monitoring of medications and bladder function. Dr. Kiser assessed a 24 percent impairment rating and recommended the following work restrictions: "Any return to work program would have to consist of a sit down job at a chair or wheelchair level such as paperwork or driver/dispatch/coordination job. He would not be able to carry objects or drive a vehicle." AAA accepted the 24 percent impairment rating.

On 3 March 2017, a representative from AAA's insurance provider sent a fax to Calhoun's attorney, stating in part, "[Calhoun's] employer can accommodate his restricted duty and has work available for him starting immediately. Will you please notify Mr. Calhoun to contact his employer for his schedule." On 15 June 2017, Calhoun received a letter from Twyla Jamerson, the occupational-health nurse at AAA; that letter stated,

> As you are aware, as of March 3, 2017, we have light duty work available for you within your restrictions specified by Dr. Kiser on March 1, 2017.
>
> As we have not heard from you, please contact Twyla at the Area Agency on Aging office and advise us of your decision to begin light duty work so we will know when to expect you. Please contact Twyla by June 21, 2017.

Calhoun did not return to work.

The ALJ conducted a hearing on 15 March 2019 to determine Calhoun's entitlement to additional permanent partial-disability, permanent total-disability, or additional wage-loss disability benefits. AAA contended that Calhoun had refused the offers of employment, therefore he was not entitled to any benefits over his impairment rating. Calhoun testified that after he reached MMI, he received a call from AAA that

"offered me to come back to work, but they didn't say exactly what I would be doing to my knowledge. . . . I think they said light duty[.]" He said he did not think he could return to work at that time due to continued pain and problems with incontinence. He explained that he had not looked for other employment because of these same issues but that he would be interested in working in the right conditions. On cross-examination, he agreed that if a facility was handicap accessible, he could work in that facility. He also said that after receiving the letter from Twyla Jamerson, he called and told her that he could not come back to work because he was in too much pain. He agreed that he did not ask what job AAA had for him or ask any specifics about the job.

Jamerson testified that when she sent the June 2017 letter to Calhoun, AAA had light-work duty available that could accommodate his restrictions. Jamerson explained that the letter was not more specific as to the available job because "we wanted to be able to get his input on what his abilities were and offer him the opportunity to know what the job duties were and to be able to customize that job, you know, that would meet his abilities and disabilities." She confirmed that she received a call from Calhoun, and he said he was in too much pain to return to work. When asked what type of job she had in mind when she sent the June 2017 letter, Jamerson said there had been a job available for a greeter at the senior center, and she reiterated that "we wanted to be able to discuss with him, you know, what accommodations we could make[.]"

The ALJ found that it was "unclear exactly what position or wages the respondents were offering the claimant to return to work" and concluded that Calhoun had sustained a wage-loss disability in the amount of 60 percent in addition to his physical-impairment

rating of 24 percent. AAA appealed to the full Commission, and in December 2019, the Commission reversed the ALJ and found that AAA had "extended a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than the claimant's average weekly wage at the time of the accident." The Commission found that Jamerson was a credible witness, that the "evidence of record" corroborated Jamerson's testimony, and that the evidence did not corroborate Calhoun's testimony that he was physically unable to return to restricted work. Calhoun has now appealed to this court.

We review the Commission's decision in the light most favorable to its findings and affirm when the decision is supported by substantial evidence. *Parker v. Atl. Research Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission but whether reasonable minds could reach the result found by the Commission: if so, the appellate court must affirm. *Parker v. Comcast Cable Corp.*, 100 Ark. App. 400, 269 S.W.3d 391 (2007). It is the Commission's duty to make determinations of credibility, to weigh the evidence, and to resolve conflicts in medical testimony and evidence. *Martin Charcoal, Inc. v. Britt*, 102 Ark. App. 252, 284 S.W.3d 91 (2008).

Pursuant to Ark. Code Ann. § 11-9-522(b)(1) (Repl. 2012), when a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating on the basis of wage-loss factors. *Redd v. Blytheville Sch. Dist. No. 5*, 2014 Ark. App. 575, 446 S.W.3d 643. The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Lee v. Alcoa*

4

*Extrusion, Inc.*, 89 Ark. App. 228, 201 S.W.3d 449 (2005). Section 11–9–522(b)(2), however, provides that

> so long as an employee, subsequent to his or her injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his or her average weekly wage at the time of the accident, he or she shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by a preponderance of the medical testimony and evidence.

Ark. Code Ann. § 11-9-522(b)(2). Arkansas Code Annotated section 11-9-522(c)(1) places the burden on the employer of providing "the employee's receipt of a bona fide offer to be employed." This means that there must be an actual offer of employment. *See Cross v. Crawford Cty. Mem'l Hosp.*, 54 Ark. App. 130, 923 S.W.2d 886 (1996) (holding that evidence showed that any type of job available to appellant was speculative and based on future circumstances, and there was no evidence in the record indicating what rate of pay appellant would receive if she returned to a job with appellee).

Calhoun argues that there is no substantial basis to support the Commission's conclusion that AAA extended a bona fide offer of employment. He contends that the alleged job offer was speculative, that it contained a "condition precedent" requiring him to contact Jamerson so a position could be customized, and that neither communication from AAA identified what job was being offered to him. Further, neither communication from AAA discussed or even mentioned what rate of pay he would receive. Calhoun also asserts that even assuming he had been offered the greeter position identified by Jamerson at the hearing, that job required physical elements outside of his capabilities and thus could not be considered a bona fide offer of employment. *See Wal-Mart Assocs., Inc. v. Keys*,

5

2012 Ark. App. 559, 423 S.W.3d 683 (stating that an employee must be capable of performing the required job activities in order for the proposed position to be considered a bona fide offer of employment). He argues that the greeter position was a quasi–security position, which would involve physically stopping unauthorized persons from entering the facility, and that the position did not account for his pain level or continuing incontinence problems.

In response, AAA asserts that it extended two offers of employment, on 3 March and 15 June 2017, and that Calhoun unequivocally rejected those offers. AAA argues that § 11-9-522(b) does not require all details of a bona fide job offer to be "spelled out"; instead, it is sufficient that the bona fide offer is extended. It contends that Calhoun was cleared to return to work in a sedentary capacity and that it offered Calhoun a job within this restriction, specifically a job as a greeter for the senior citizen center. AAA also argues that Calhoun had previously earned minimum wage, and any offer would have to at least pay that same wage, so "the rate of pay for the job offer is not an issue." Finally, AAA denies that the greeter position was outside his physical capabilities and notes the Commission's finding that "[t]he evidence does not corroborate the claimant's testimony that he was physically unable to return to restricted work as a result of issues related to his bladder bowel."

We hold that the evidence in this case does not show that Calhoun was offered a job as required by Ark. Code Ann. § 11-9-522(b)(2). AAA did not identify a specific job or the proposed duties of that job, and there is no evidence in the record to support the Commission's finding that AAA offered to employ Calhoun at wages equal to or greater

than his average weekly wage at the time of the accident. The specific position of a greeter—and the requirements of that job—were not discussed until the hearing before the ALJ. Thus, we hold that the Commission's decision is not supported by substantial evidence and reverse.

Reversed and remanded.

VIRDEN and BROWN, JJ., agree.

*Rainwater, Holt & Sexton, P.A.*, by: *Kolton Jones*, for appellant.

*Barber Law Firm PLLC*, by: *Karen H. McKinney*, for appellees.