Cite as 2021 Ark. 56

# SUPREME COURT OF ARKANSAS

No. CV-20-78

| | |
|---|---|
| LEROY CALHOUN<br><div align="right">APPELLANT</div> | Opinion Delivered: March 11, 2021 |
| V. | |
| AREA AGENCY ON AGING OF<br>SOUTHEAST ARKANSAS<br><div align="right">APPELLEE</div> | APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION<br>[NO. G600346] |
| | REVERSED AND REMANDED;<br>COURT OF APPEALS OPINION<br>VACATED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant, Leroy Calhoun, appeals the Arkansas Workers' Compensation Commission's decision that he was not entitled to a wage-loss award in addition to his impairment rating because appellee, Area Agency on Aging of Southeast Arkansas (AAA), extended to him a bona fide offer of employment. For reversal, Calhoun argues that (1) he proved by a preponderance of the evidence that he was entitled to the wage loss awarded by the administrative law judge, (2) no bona fide job offer was made, and (3) the job that AAA contemplated involved requirements that were outside of his abilities. Because substantial evidence does not support the Commission's conclusion that AAA offered Calhoun

employment at wages equal to or greater than his average weekly wage at the time of his accident, we reverse and remand.

Calhoun was employed with AAA as part of its Meals on Wheels program, and his part-time duties included loading a van and delivering food to the elderly. Calhoun was driving a AAA van that overturned in an accident on January 13, 2016. He was not restrained at the time. Calhoun sustained a fractured neck at C1 through C3 with temporary paralysis, closed-head injury and laceration to the scalp, blunt-chest trauma with a collapsed lung, and abdominal injuries. After a January 14, 2016 neck surgery, Calhoun underwent extensive treatment, including physical and occupational therapy. On February 1, 2017, approximately one year after Calhoun's neck surgery, Thomas S. Kiser, M.D., recommended standing, stretching, and walking activity. Dr. Kiser also noted that Calhoun was scheduled to see Dr. David Lupo on February 9. On February 21, Dr. Lupo performed a cystoscopy, cystometrogram, electromyelogram, urethral pressure profile, flow rate testing, and bilateral retrograde pyelograms. After the procedures, Dr. Lupo diagnosed mild-urgency incontinence but found no evidence of significant neurogenic bladder. Dr. Lupo's notes reflect that he was not recommending treatment at that time. On February 27, Dr. Kiser released Calhoun at maximum medical improvement with a 24 percent permanent partial-impairment rating to the whole body. This rating is not disputed. Dr. Kiser noted that he "[e]ncouraged [Calhoun] to maintain active lifestyle and HEP." On March 1, Dr. Kiser added a note stating that "[a]ny return to work would have to consist of a sit down job at a chair or wheelchair level such as paperwork or driver dispatch/coordination job. He would not be able to carry

2

objects or drive a vehicle." At the time of the accident, Calhoun's average weekly wage was $190.49, and he was not guaranteed any set hours. His biweekly pay amount ranged from $187.50 to $423.75.

On March 3, 2017, Lori Bloom of Risk Management Resources, AAA's insurance carrier, sent Calhoun's counsel a facsimile message that stated in its entirety:

> I have attached Dr. Kiser's report from 2-27-17. Mr. Calhoun is at MMI and has a rating.
>
> His employer can accommodate his restricted duty and has work available for him starting immediately.
>
> Will you please notify Mr. Calhoun to contact his employer for his schedule.
>
> I will initiate PPD benefits.

About three months later, on June 15, 2017, AAA sent Calhoun himself a letter signed by Twyla Jamerson, RN, stating in its entirety:

> As you are aware, as of March 3, 2017, we have light duty work available for you within your restrictions specified by Dr. Kiser on March 1, 2017.
>
> As we have not heard from you, please contact Twyla at Area Agency on Aging office and advise us of your decision to begin light duty work so we will know when to expect you. Please contact Twyla by June 21, 2017.

Calhoun testified at the hearing before the ALJ that he completed a year and a half of college, had work experience as a military police officer and as a welder and a coil winder, and that he had worked at the Pine Bluff arsenal. He also said that he had never worked at a sedentary job or in a supervisory capacity and that he still experienced incontinence issues. Calhoun stated that he did call and talk to Jamerson but conceded that he did not ask about

3

any specifics of the job offered. Instead, Calhoun told her that he was in too much pain to work. Jamerson testified that Calhoun called her after he received the second letter. She recalled that the job available was as a greeter and that it was sedentary. She stated that she did not relay details about the job requirements because she wanted to get Calhoun's input on his abilities and "customize" the job to meet his abilities and disabilities. She offered no testimony as to the position's anticipated weekly wages.

In an opinion dated June 6, 2019, the ALJ found that Calhoun proved that he was entitled to a 60 percent wage-loss award in addition to his 24 percent anatomical-impairment rating. The ALJ determined that appellees made no bona fide job offer because the position and wages offered were not clear. AAA appealed both the wage-loss determination and the finding that it did not extend a bona fide offer of employment. The Commission reversed the ALJ's decision. The Commission did not address the validity of the ALJ's wage-loss determination but concluded that any wage-loss award was precluded because AAA made a bona fide and reasonably obtainable offer for Calhoun to be employed at wages equal to or greater than his average weekly wage at the time of the accident. Calhoun appealed, and the court of appeals reversed the Commission's decision and remanded for an award of benefits. *Calhoun v. Area Agency on Aging of Se. Ark.*, 2020 Ark. App. 366, 607 S.W.3d 176. We granted AAA's petition for review. When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008).

When the Commission denies benefits because a claimant has failed to meet his or her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). We view the evidence in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence, which is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue on review is not whether the evidence would have supported a contrary finding or whether we might have reached a different result; we affirm if reasonable minds could reach the Commission's conclusion. *White Cty. Judge v. Menser*, 2020 Ark. 140, 597 S.W.3d 640. We defer to the Commission on issues involving credibility and the weight of the evidence. *Id.*

When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Knight*, 372 Ark. 233, 273 S.W.3d 473. The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Patterson v. Ark. Dep't of Health*, 343 Ark. 255, 33 S.W.3d 151 (2000).

This appeal concerns the construction and application of our workers'-compensation statutes. The question of the correct interpretation and application of an Arkansas statute is a question of law, which we decide de novo. *Miller v. Enders*, 2013 Ark. 23, 425 S.W.3d 723. We construe statutes so that no word is left void, superfluous, or insignificant; and meaning

and effect are given to every word in the statute. *Walther v. FLIS Enters., Inc.*, 2018 Ark. 64, 540 S.W.3d 264. When we construe the workers'-compensation statutes, we must strictly construe them. *Myers v. Yamato Kogyo Co., Ltd.*, 2020 Ark. 135, 597 S.W.3d 613; Ark. Code Ann. § 11-9-704(c)(3) (Repl. 2012). The doctrine of strict construction requires this court to use the plain meaning of the language employed. *Id.* Strict construction means narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Hapney v. Rheem Mfg. Co.*, 341 Ark. 548, 26 S.W.3d 771 (2000).

The question we must answer is whether substantial evidence supports the Commission's decision that Calhoun received a bona fide offer to be employed at a wage that met or exceeded his average weekly wage at the time of the accident. Calhoun first contends that the job offer was not "bona fide" because it was speculative and involved conditions precedent, and that AAA never communicated essential elements such as title, duties, and rate of pay. Next, Calhoun claims that the job contemplated required duties that exceeded his abilities because of his pain and his skills and experience.

We have said that an employee who sustains an injury may be entitled to wage-loss disability in addition to his or her anatomical loss. *Glass v. Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961). The wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Wal-Mart Stores, Inc. v. Connell*, 340 Ark. 475, 10 S.W.3d 882 (2000). When a claimant has an impairment rating to the body as a whole, the Commission has the authority to increase the disability rating based upon wage-loss factors. *Sivixay v. Danaher Tool Grp.*, 2009 Ark. App. 786, 359 S.W.3d 433. The Commission is

6

charged with the duty of determining disability based upon a consideration of medical evidence and other factors affecting wage loss, such as the claimant's age, education, and work experience. *Id.* Disability is the "incapacity because of compensable injury to earn, in the same or any other employment, the wages which the employee was receiving at the time of the compensable injury." Ark. Code Ann. § 11-9-102(8). However, an employee with a "bona fide" offer to be employed at wages equal to or greater than the employee's average weekly wage at the time of the accident is ineligible for wage-loss disability. Specifically, Arkansas Code Annotated section 11-9-522(b)(2) provides,

> [S]o long as an employee, subsequent to his or her injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his or her average weekly wage at the time of the accident, he or she shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by a preponderance of the medical testimony and evidence.

Significantly, pursuant to Arkansas Code Annotated section 11-9-522(c)(1), an employer, or the employer's workers'-compensation insurance carrier, has the burden to prove the employee's receipt of a bona fide offer to be employed, at wages equal to or greater than his or her average weekly wage at the time of the accident. Additionally, an employee must be capable of performing the required job activities in order for the proposed position to be considered a bona fide offer of employment. *Sivixay*, 2009 Ark. App. 786, 359 S.W.3d 433.

We first consider whether Calhoun received a bona fide offer to be employed at an average weekly wage that met or exceeded his average weekly wage at the time of the accident. Calhoun concedes that AAA sent him two letters stating that a position was available. He

7

argues that these letters do not constitute a bona fide offer because the "offer" was speculative, involved conditions precedent, and was missing fundamental elements such as the pay rate. AAA's letters advised Calhoun that it "can accommodate his restricted duty and has work available for him starting immediately." The letters also noted that AAA was aware of Calhoun's restrictions and was able to accommodate them. We are not convinced that a strict reading of section 11-9-522(b)(2) requires an offer letter to contain the level of detail that Calhoun suggests is required and we will not add a "checklist" requirement to section 11-9-522(b)(2). However, section 11-9-522(b)(2) does require that the employment offer be for a weekly wage that is equal to or greater than the employee's average weekly wage at the time of the accident. In this instance, Calhoun was earning $7.50 per hour when he had his accident. At the time of the second offer letter, Arkansas Code Annotated section 11-4-210(a)(2) (Supp. 2019) mandated a minimum wage of $8.50 per hour, so Calhoun's hourly rate would have necessarily been higher. But section 11-9-522(b)(2) addresses weekly pay and not an hourly pay rate. Calhoun's average weekly wage was a product of his hourly pay rate multiplied by the number of hours he received. AAA never conveyed to Calhoun the number of hours he could expect at the job it offered. It is true that Calhoun advised Jamerson that he could not work because of his pain and arguably truncated the interactive process. However, we disagree with AAA's contention that this case is like *Redd v. Blytheville School District No. 5*, 2014 Ark. App. 575, 446 S.W.3d 643. There, the court of appeals found that Redd had received a bona fide offer of employment that precluded wage-loss benefits. The court of appeals specifically noted that Redd "testified that he had the same hours and

8

pay." *Id.* at 6, 446 S.W.3d at 647. Here, no hearing testimony was offered to establish the number of hours that Calhoun would receive with the employment AAA offered. Calhoun may have prevented this information exchange when he was discussing the employment offer with AAA. However, pursuant to section 11-9-522(c)(1), the employer or the employer's insurer has the burden to prove the existence of a bona fide offer for the employee to be employed at wages equal to or greater than his or her average weekly wage at the time of the accident. AAA could have met this burden at the hearing, but it offered no evidence regarding the number of hours Calhoun would receive. Because AAA never introduced any evidence at the hearing to establish the number of available hours, it did not prove the existence of a bona fide offer to Calhoun to be employed at wages equal to or greater than his or her average weekly wage at the time of the accident. We must give effect to every word in our statutes, including those placing the burden on AAA to prove that the employment offered would have been at wages equal to or greater than his prior weekly wage. Here, because AAA introduced no evidence pertaining to the number of hours of work that Calhoun would receive, it failed to prove the existence of an employment at wages equal to or greater than his average weekly wage at the time of the accident.[1]

Because AAA failed to introduce evidence regarding the number of hours of work available to Calhoun, substantial evidence does not support the Commission's decision that

[1]Calhoun has also argued that the greeter's position offered would have required duties that exceeded his abilities. The record does contain a written job description for the greeter's position that AAA contemplated.

9

the employment AAA offered would have been at weekly wages at least equal to those Calhoun previously earned. Therefore, we need not consider Calhoun's additional argument that the employment AAA contemplated exceeded his skills or physical abilities.

In sum, the doctrine of strict construction requires us to use the plain language of the worker's-compensation statutes. *Myers*, 2020 Ark. 135, 597 S.W.3d 613. The plain language of the relevant statutes here places upon the employer or insurer the burden to demonstrate the existence of a bona fide offer of employment at wages equal to or greater than Calhoun's average weekly wage at the time of the accident. Because the record is entirely devoid of any evidence pertaining to number of hours Calhoun would have received, AAA did not meet its burden to prove that he was offered employment at wages equal to or greater than his average weekly wage at the time of the accident, and substantial evidence does not support the Commission's decision.

Reversed and remanded; court of appeals opinion vacated.

WOOD, WOMACK, and WEBB, JJ., dissent.

**RHONDA K. WOOD, Justice, dissenting.** The Arkansas Workers' Compensation Commission found Leroy Calhoun had no right to wage loss benefits because the Area Agency on Aging of Southeast Arkansas (Agency) made him a bona fide offer of employment. Substantial evidence supported the Commission's decision. Because I would affirm, I dissent from the majority's opinion.

Calhoun was injured while driving a van as a part-time employee when he ran a stop sign and was hit by another vehicle. He was not wearing a seatbelt and suffered severe

injuries. In March, once Calhoun's treating physician approved him for light-duty work, Risk Management notified him that the Agency had a position available, that he could return to work, and to contact the Agency for the schedule. Calhoun testified that he did not want to return to work, so he did not follow up. In June, the Agency sent Calhoun a letter, this one from an occupational nurse: "As you aware, since March 3, 2017, we have light duty work available for you with your restrictions specified by Dr. Kiser." The nurse asked Calhoun to please contact her about his decision and to let them know when to expect him. Calhoun contacted her after receiving this letter but declined to return to work. He said he was in too much pain and did not have transportation. The nurse informed him the Agency was willing to provide transportation to and from work because of Calhoun's wheelchair use as well as meet all physical restrictions. He still declined to work.

Arkansas Code Annotated section 11-9-522(b)(2) provides that an employee shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment if the employee "has a bona fide and reasonably obtainable offer to be employed at wages equal to or greater than his or her average weekly wage at the time of the accident."

The majority misapplies our standard of review for workers'-compensation claims, which requires appellate courts to defer to the Commission's decision:

> In appeals involving claims for workers' compensation, this court views the evidence in a light most favorable to the Commission's decision and affirms that decision if it is supported by substantial evidence. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. The issue is not whether the appellate court might have reached a different result from the Commission, but rather whether

reasonable minds could reach the result found by the Commission. If so, the appellate court must affirm the Commission's decision.

*Sierra v. Griffin Gin*, 374 Ark. 320, 322, 287 S.W.3d 556, 558 (2008) (cleaned up).

The majority departs from this standard and does not view the evidence in the light most favorable to the Commission. Nor does it examine whether substantial evidence supported the Commission's decision. The majority highlights the second prong of the statute—whether the bona fide offer was "at wages equal to or greater than" Calhoun's average weekly wage before the accident. But the majority fails to view that requirement in factual context.

Substantial evidence showed that Calhoun simply didn't want to work, not that the Agency offered an inadequate job. Consider the facts before the accident: Calhoun made minimum wage, or $7.50 an hour. He did not have a guaranteed number of weekly hours but averaged 25.39 for an average weekly income of $190.49. After the accident, the Commission credited testimony that the Agency stood ready to provide Calhoun bona fide employment, at the same or greater pay, with a customized job and that it would even provide him transportation. The testimony showed the only reason why the job lacked more specifics was that the Agency was waiting for Calhoun's input. But Calhoun repeatedly responded that he did not want to return to work--not that he needed more specifics about his hours or pay. This evidence, viewed in the light most favorable to the Commission, showed that the Agency offered Calhoun a job with wages equal to or greater than what he made before the accident. It is unreasonable to contemplate the possibility he would be paid less than

minimum wage. Because the Commission's decision is supported by substantial evidence and the law, I respectfully dissent.

WOMACK and WEBB, JJ., join.

*Rainwater, Holt & Sexton, P.A.*, by: *Kolton Jones*, for appellant.

*Barber Law Firm, PLLC*, by: *Karen H. McKinney*, for appellees.