2012 Ark. 406

**John PEARSON, Appellant**

v.

**WORKSOURCE and Wausau Insurance Company, Appellees.**

**No. 11–1295.**

Supreme Court of Arkansas.

Nov. 1, 2012.

Walker, Shock & Harp, PLLC, Fort Smith, by: Eddie H. Walker, Jr., for appellant.

Ledbetter, Cogbill, Arnold & Harrison, LLP, Fort Smith, by: James A. Arnold, II, and Rebecca D. Hattabaugh, for appellees.

ROBERT L. BROWN, Justice.

This is a workers' compensation case. Appellant John Pearson appeals from an order of the Workers' Compensation Commission (the "Commission") reversing the decision of the Administrative Law Judge (the "ALJ") and denying, with one commissioner dissenting, Pearson's claim for benefits because he failed to prove that he sustained a compensable injury to his left-great toe.

The Arkansas Court of Appeals first heard this appeal and reversed the Commission's decision on the ground that Pearson had established a claim for a rapid-repetitive injury. *Pearson v. Worksource*, 2011 Ark. App. 751, 387 S.W.3d 274. We

granted appellee Worksource's petition for review. When we grant review following a decision of the court of appeals, we consider the appeal as though it had been originally filed in this court. *Tyson Poultry, Inc. v. Narvaiz*, 2012 Ark. 118, 388 S.W.3d 16.

We vacate the opinion of the court of appeals and reverse the Commission.

Pearson, who was diagnosed with diabetes mellitus in October 1995 and is insulin-dependent, was employed by Worksource, a staffing company, on June 8, 2009. On that date, Worksource had temporarily assigned Pearson to work for Macsteel, which is engaged in the processing and distribution of steel. At the hearing before the ALJ, Pearson testified that he had no problem with his left-great toe that morning prior to going to work. He explained that his employer had outfitted him with a pair of steel-toe "metatarsal" boots that he wore to work that day and that within a couple of hours of working, his left-great toe began to bother him and his foot continued to be sore over the course of the day. When he came home from work that night and took off his boots, he noticed a blister on the side of his left-great toe.

Pearson stated, in addition, that his job duties that day had included taking steel out in large bundles to the yard to cool under fiberglass blankets. Depending on where the bundles were to be placed in the yard, he had to walk from one end of the yard to the other to cover and uncover the bundles. He testified that he walked back and forth across the yard all day, moving his feet "over and over" in order to walk from place to place. He added that he was required to cover the bundles as quickly as possible so that he had to walk fast and "hot step it" to complete his task.

Pearson testified that he believed his boots contributed to the development of the blister because he could feel the edge of the steel toe rubbing and pressing against his left-great toe. Pearson also testified that he reported his injury to his employer and asked if he could get a wider pair of boots. He was told that he could not be provided a replacement pair of boots but that he could purchase his own.

On June 17, 2009, Pearson had a routine appointment with his general practitioner, Dr. James Saunders. Pearson reported the problem with his toe. In his notes, Dr. Saunders wrote that Pearson had "developed an ulceration on his medial left big toe from using work boots," that it had a "purulent discharge," and that Pearson had been "using topical antibiotic ointment and the redness and swelling ha[d] decreased in the last couple of days." Dr. Saunders diagnosed Pearson as having diabetic peripheral neuropathy type II and cellulitis.

Next, Worksource sent Pearson to Dr. Terry Clark on July 30, 2009, who diagnosed him with "diabetic ulcer and cellulitis of the left great toe" and returned him to work with the restriction that he alternate standing, sitting, and walking as he could tolerate with no pressure on his left-great toe. Dr. Clark noted that Pearson had been "working with some steel toed boots that according to him were too narrow." Dr. Clark referred Pearson to a podiatrist, Dr. John Wright, who evaluated Pearson on July 31, 2009, and wrote that Pearson had a "Wagner's Grade 3 ulceration on the plantar medial aspect of the left hallux." He also noted "purulent drainage . . . erythema and swelling of the left hallux." Dr. Wright debrided necrotic tissue from the ulceration and drained it. He advised Pearson to return in three days for further treatment and for more tests to ensure that there was no indication of osteomyelitis.

On August 20, 2009, a physician's note from Dr. Wright read that Pearson had a "severe infection in his left foot," that it was possible his foot would have to be amputated, and that it was necessary to admit him. Pearson was admitted to Summit Medical Center on August 20, 2009, and on August 21, 2009, Dr. Travis Goodnight, a general surgeon, performed surgery on Pearson's left-great toe, which included an "[i]ncision and debridement of left great toe of the skin and subcutaneous tissue and bone." His postoperative diagnosis was "[l]eft great toe osteomyelitis, cellulitis and abscess." Dr. Goodnight saw Pearson again on September 15, 2009, and reported that the wound was healing but that he had "[e]arly osteomyelitis of the left great toe" and that there was still a "possibility of losing his toe." Dr. Goodnight continued Pearson on antibiotics and returned him to light-duty work as of September 21, 2009, as long as he did not have to stand for longer than thirty minutes at a time. As of October 29, 2009, Dr. Goodnight reported that Pearson was doing well, that he had a new job working at the Waffle House, and that his wound was ninety-nine percent healed.

The ALJ found that Pearson had established that he had sustained a compensable injury to his left-great toe, either as an accidental "specific incident" injury or as an injury caused by rapid-repetitive motion. The Commission reversed the ALJ's decision and found that Pearson failed to prove he had sustained a compensable injury as a result of either a specific incident or rapid-repetitive motion. Specifically, the Commission found that Pearson had failed to prove the occurrence of an injury that was capable of being identified by a specific time and place of occurrence because Pearson's testimony was that his left-great toe began to bother him within a couple of hours of working and that his left foot became sore "over the course of the day" on June 8, 2009.

The Commission further found that nothing in Pearson's medical record supported a finding of a specific-incident injury. The Commission distinguished this court's holding in *Cedar Chemical Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008), on the basis that "neither the documentary evidence of record nor the instant claimant's testimony demonstrate that there was a specific incident identifiable by time and place of occurrence" and because there was "no expert opinion from a treating physician stating that the claimant had sustained an 'acute injury' or an injury resulting from a specific incident identifiable by time and place of occurrence."[1] The Commission, as a final point, found that Pearson failed to prove that he had sustained an injury as a result of rapid-repetitive motion because the record failed to show that his "left great toe 'rubbed' against his work boot in a rapid repetitive manner" or "that the 'hot step' described by the claimant . . . constituted rapid repetitive motion involving his left great toe." One commissioner filed a dissenting opinion in which he found that Pearson proved both an injury as a result of a specific incident and an injury as a result of rapid-repetitive motion.

Our standard of review for workers' compensation claims is clear. We view the evidence in the light most favorable to the Commission's decision and af-

---

1. Although the Commission writes in its decision that a "treating physician in *Cedar Chem. Co.* had opined that the claimant sustained an "acute injury," that fact is not supported by the plain language of our opinion. Although the word "acute" is used twice in the majority opinion, in neither instance is it used to quote any findings or diagnosis made by the claimant's treating physician.

firm the decision if it is supported by substantial evidence. [6]*Hudak–Lee v. Baxter Cnty. Reg'l Hosp. & Risk Mgmt. Res.*, 2011 Ark. 31, 378 S.W.3d 77. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id.* As the claimant, Pearson bears the burden of proving a compensable injury by a preponderance of the evidence. Ark.Code Ann. § 11–9–102(4)(E) (Repl. 2012).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Cedar Chem. Co. v. Knight*, 372 Ark. 233, 273 S.W.3d 473 (2008). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.*

Pearson's sole point on appeal is that substantial evidence does not support the Commission's finding that he failed to prove by a preponderance of the evidence that he sustained a compensable injury to his left-great toe and that reasonable minds could not agree with the Commission on this point. Pearson claims that under the facts of his case, his injury is compensable as either a specific-incident injury or as one caused by rapid-repetitive motion and that the Commission erred in not awarding him benefits for his injury.

A compensable injury, as defined in our statutory code, is

(i) An accidental injury causing internal or external physical harm to the body . . . [7]arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence; (ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is: (a) Caused by rapid repetitive motion. Carpal tunnel syndrome is specifically categorized as a compensable injury falling within this definition. . . .

Ark.Code Ann. § 11–9–102(4)(A) (Repl. 2012). Furthermore, "[a] compensable injury must be established by medical evidence supported by objective findings, which are findings that cannot come under the voluntary control of the patient." Ark. Code Ann. § 11–9–102(4)(D), (16).

In its decision that Pearson failed to prove the occurrence of an injury that could be specifically identified by time and place of occurrence, the Commission relied on Pearson's testimony that his left foot became sore over the course of the June 8, 2009 work day; that his left-great toe started bothering him within the first couple of hours of working on June 8; and that he believed that he developed the blister from walking in steel-toe work boots that rubbed his left-great toe. The Commission specifically wrote that "[t]here was no part of claimant's testimony from which [it] could conclude that the claimant injured his left great toe as the result of a specific incident identifiable by time and place of occurrence." Moreover, in distinguishing the instant case from *Cedar Chemical Co.*, the Commission found that "neither the documentary evidence of rec-

ord nor the instant claimant's testimony demonstrate that there was a specific incident identifiable by time and place of occurrence." We disagree.

In *Edens v. Superior Marble & Glass,* this court noted that "a strict construction of |8[section 11–9–102(4)(A)(i) ] does not require, as a prerequisite to compensability, that the claimant identify the precise time and numerical date upon which an accidental injury occurred. Instead, the statute only requires that the claimant prove that the occurrence of the injury is capable of being identified." 346 Ark. 487, 492, 58 S.W.3d 369, 373 (2001). In *Edens,* the claimant testified that he injured his back while lifting marble but that he could not be specific about the day the incident occurred. *Id.* We reversed the Commission's decision to deny him benefits to the extent that its decision was based on Edens's inability to provide the exact date of his injury.

In a later case, *Cedar Chemical Co.,* we affirmed the Commission's finding that the claimant had suffered a compensable knee injury resulting from a "specific incident" where the claimant testified that his job required him to travel three flights of stairs between five and eight times during a twelve-hour shift; that he noticed pain in his knee at one point while descending the stairs; and that several hours later, the pain worsened to the point that he could not bear weight on that leg. 372 Ark. at 234, 273 S.W.3d at 473. The claimant in *Cedar Chemical Co.* could not identify a precise moment when the injury occurred. Instead, he could only point to when he first felt pain and explain that his pain worsened throughout the course of the day. We said in that case that "[s]imply because [the claimant's] injury is unexplained does not render it noncompensable." 372 Ark. at 240, 273 S.W.3d at 478.

Pearson testified, in the case before us, that his employer provided him with a pair of steel-toe work boots and that he wore them to work on June 8, 2009, where he was required to walk across a yard multiple times carrying bundles of steel. He often did this at a quick |9pace. He testified that within a couple of hours of working, his left-great toe began to bother him; that he had not felt any pain or soreness in his left toe that morning before work; that he could feel the edge of the steel toe rubbing and pressing the area where his left toe was sore; and that after getting home and taking off his boots, he discovered a blister on his left-great toe. Pearson further testified that he informed his employer of the problem and requested wider boots. Because of these circumstances, both Dr. Saunders and Dr. Clark made medical notes to the effect that Pearson reported that he had acquired the blister from wearing steel-toe work boots. The fact that Pearson could not identify the exact moment that the blister emerged and became visible because he was wearing a boot is not determinative. Rather, "the statute only requires that the claimant prove that the occurrence of the injury is capable of being identified." *Edens,* 346 Ark. at 492, 58 S.W.3d at 373.

There is no indication in the Commission's opinion that it discounted Pearson's testimony or found him not to be credible. Rather, the Commission simply decided that based on his testimony alone, it could not conclude that his injury was the result of a "specific incident." It appears that the Commission, without analysis, determined that because Pearson's injury (the blister) may have gradually worsened over the course of the work day, it could not be categorized as a specific-incident injury. In other words, without evidence of a specific, isolated, immediate incident causing his injury, the Commission concluded that Pearson was not entitled to benefits. And

yet, what Pearson presented to the Commission, if believed, would constitute a compensable injury as a result of a specific incident that occurred while doing his job in light of *Edens* and *Cedar Chemical Co.* Because the Commission clearly believed Pearson, it was unreasonable for the Commission to conclude that Pearson did not suffer an injury as a result of a specific incident on June 8.

This case is different from *Weaver v. Nabors Drilling USA*, 98 Ark.App. 161, 253 S.W.3d 30 (2007), where the claimant experienced an onset of tingling and numbness in his hands after "mixing mud" with his hands, and an MRI later revealed that the claimant suffered from two herniated discs. In that case, the court of appeals affirmed the Commission's denial of benefits because the claimant proved only that he had an injury and felt pain at work; he did not establish that a specific incident occurred at work. *Id.* Likewise, this case is unlike *Hapney v. Rheem Mfg. Co.*, 342 Ark. 11, 26 S.W.3d 777 (2000), where this court affirmed the Commission's denial of benefits as a result of a specific-incident injury where the claimant's own testimony was that she did not know how she injured her neck, she could not point to anything specific that caused the injury, and she failed to report to her physician that her pain was associated with any specific incident.

In sum, there is an obvious, direct correlation in the instant case between the injury Pearson claimed he suffered at work (the blister) and the specific incident that he maintains caused that injury (repeatedly walking across the field while wearing ill-fitting work-supplied boots). This is not an "unexplained injury." Pearson explained that within a couple of hours of starting work, he felt pain in his left-great toe. He further noted that his foot continued to be sore throughout the day. He ultimately discovered that the rubbing and pressing of his steel-toed work boot while walking to perform his work duties, though not identifiable as to the precise time the blister visibly emerged, caused him to form a blister on his left-great toe. In short, reasonable minds could not disagree on the incident that caused the injury.

Because we hold as we do, that the injury resulting in a blister was caused by a specific incident, it is unnecessary for this court to address the rapid-repetitive-motion claim for a gradual-onset injury, which was the basis upon which the court of appeals reversed the Commission.

Decision of the Workers' Compensation Commission reversed and remanded; opinion of the court of appeals vacated.