Cite as 2023 Ark. App. 53

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-22-527

| | |
|---|---|
| SPRINGFIELD GROCER CO. AND INDEMNITY INS. CO. OF NORTH AMERICA/SEDGWICK CLAIMS SERVICES, INC. <br><br> APPELLANTS <br><br> V. <br><br> DILLON CHAULSETT <br> APPELLEE | Opinion Delivered February 8, 2023 <br><br> APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. H107393] <br><br><br> AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellants, Springfield Grocer Co. (Springfield or employer) and Indemnity Insurance Co. of North America/Sedgwick Claims Services, Inc. (insurance carrier), (collectively appellants), appeal from a June 28, 2022, opinion by the Arkansas Workers' Compensation Commission (Commission) affirming and adopting the findings of fact and conclusions of law made by the administrative law judge (ALJ) in favor of appellee, Dillon Chaulsett (sometimes referred herein as claimant). The Commission found that Chaulsett sustained a compensable injury on July 19, 2021; that appellants are liable for payment of all reasonable and necessary medical treatment provided in connection to Chaulsett's compensable lumbar spine injury; that Chaulsett was entitled to temporary total-disability benefits from July 21 through December 2, 2021; and that Chaulsett's attorney was entitled

to attorney's fees. Appellants argue that substantial evidence does not support the Commission's decision. We affirm.

I. *Relevant Facts*

Chaulsett testified that he was employed by Springfield in 2019 as a grocery-delivery driver. He alleged that he sustained a specific-incident compensable injury to his lower back on July 19, 2021, and provided the following testimony as to how he sustained his injury:

> I finished my stop at 4 Star Diner and as I loaded everything up into my vehicle and got into my vehicle, as soon as I sat down and my butt made contact with the seat, I felt a pain from my lower back going down to my right leg.

Chaulsett further explained that he had to climb using handle bars in order to get into the cab of his vehicle. On cross-examination, Chaulsett reiterated that he was "saying that [he] was injured when [he was] entering a truck on July 19, 2021," and that he felt the pain in his "lower back and right leg" as soon as he "made contact with the seat." He further admitted that during his deposition, he stated, "I finished my stop at 4 Star Diner and as I was leaving, as I sat down in my truck to leave, the pain started setting into my back slowing going down my right leg." He went on to explain that he felt the pain immediately and that it gradually just got worse and that he felt the pain when sitting.

After the injury, Chaulsett texted his supervisor the same day that his "lower back is giving out" and that he was going to try to go to a chiropractor after work but that he could not get an appointment. His supervisor did not respond to his text. The next day, Chaulsett texted his supervisor again and stated, "I don't know how far I'm gonna get today Steve. My lower back is hurting a lot." Chaulsett's supervisor instructed him to make sure he was doing

2

stretches regularly throughout the day and lifting properly, and the supervisor inquired as to whether Chaulsett was able to get an appointment with his chiropractor. Chaulsett responded that he did have an appointment the next day, July 21, 2021, but that it was really hurting to sit and drive. Chaulsett testified that his supervisor ended up coming to help him that day and that he "told him the whole story [of] how everything happened."

Chaulsett admitted that he had seen the same chiropractor, Dr. Alan Alexander at the Balkman Chiropractic Clinic, before this incident for pain that he had in the middle of his back, but he testified that he had never seen his chiropractor for the same type of pain like he had begun experiencing on July 19, 2021. He also admitted that he had previously been treated for back pain approximately five years before this incident during his previous employment with Coca-Cola after lifting a case of water. However, he explained that he had recovered from that incident after only a couple of weeks.

Chaulsett testified that after seeing Dr. Alexander for his new injury, his pain did not go away. Instead, he claimed that it worsened and became "extreme" after he coughed on July 24, 2021. He went to the emergency room that same day. He explained that the pain on July 24, 2021, was the same type of pain and in the same location as it was since July 19 but that it was even more severe. Chaulsett was later evaluated by two nurse practitioners, Laura Pace and Robert Langston, before he eventually ended up undergoing surgery by Dr. Daraspreet Kainth on September 27, 2021. Chaulsett testified that although he still felt some numbness in his right leg after the surgery, he was able to return to work on December 22, 2021, and is able to do his job.

Chaulsett testified that his employer initially did not have him file any paperwork for workers' compensation. Instead, after he was seen in the emergency room, his supervisor told him to contact human resources, and his employer thereafter sent him a short-term-disability claim packet that he completed and signed on July 29, 2021. Chaulsett testified that after he discovered that he was still expected to make copayments, he contacted human resources again. He explained that it was only after he mentioned that he was going to get an attorney that he was sent the forms to file for workers' compensation. Chaulsett further testified that his employer would have had video footage from his truck of the incident; however, his employer explained that it was destroyed because it kept such footage for only thirty days.

The medical record indicates that Chaulsett began seeing his chiropractor, Dr. Alexander, on June 17, 2020. Dr. Alexander noted that Chaulsett complained of

> Mid Back Pain. He said "PATIENT STATES HE HAS HAD AN ACHE IN HIS MIDBACK FOR YEARS AND RECENTLY SINCE CARRYING GROCERIES HE HAS GOTTEN WORSE." He had experienced this condition before. The symptoms are rated as moderate. He says the symptoms are dull ache, radiating pain tightness and stiffness. Patient's expectations: reduce symptoms and resume normal activity. The symptoms radiate to upper back. The symptoms are rated at 5. The symptoms are happening constantly (76–100% of the day). Symptoms are getting a little better. Chiropractic therapy makes the symptoms better.

However, under the treatments and diagnosis sections, Dr. Alexander also noted "Low back pain (M54.5)" even though low back pain was not listed as a complaint at that time. Dr. Alexander's notes are similar for Chaulsett's visit on July 8, 2020. On October 21, 2020, Dr. Alexander noted that Chaulsett complained of low back pain and rated his symptoms as

4

mild.  By February 24, 2021, Chaulsett reported that his low back pain had gotten a "little worse" and rated his symptoms as moderate.  However, by June 2, 2021, Dr. Alexander noted that Chaulsett only complained of "Mid Back Pain."  However, under the treatments and diagnosis sections, Dr. Alexander still noted "Low back pain (M54.5)."

On July 21, 2021, Dr. Alexander noted that, in addition to moderate mid-back pain, Chaulsett complained of low back pain, and for the first time, Chaulsett rated his symptoms as "severe."  Dr. Alexander noted that "[Chaulsett] says the symptoms are radiating pain and sharp.  The symptoms radiate to right leg."  Like before, the treatments and diagnosis sections noted "Low back pain (M54.5)."  Dr. Alexander took Chaulsett off work as the result of an "injury."  By Chaulsett's July 23, 2021, visit, Dr. Alexander's notes state that Chaulsett reported that his "symptoms are dull ache, radiating pain, sharp, shooting and stabbing pain.  The symptoms radiate to right leg.  The symptoms are rated at 9."

The records from Mercy Hospital Northwest Arkansas indicate that Chaulsett sought treatment in the emergency room on July 24, 2021.  Spasms were present in his lumbar back, and he had a positive right straight-leg-raise test.  A diagram that was part of the report shows that his pain was located in Chaulsett's low back on the right side.

Chaulsett was evaluated by Nurse Practitioner Pace on July 27, 2021.  She noted that he reported that he felt his back give out as he was "getting up in semi-truck."  She further noted that his condition was worsened by "[c]oughing, ambulation, bending, deep breathing, movement, lying down, sitting, sneezing, twisting, standing and stress."

On the short-term-disability claim packet that Chaulsett completed and signed on July 29, 2021, he checked that he sustained a work-related injury and that the date of his first symptom occurred on July 19, 2021. He indicated that it occurred at "4 Star Diner," that his lower back started to hurt when he sat down, and that he intended to file for workers' compensation. One of the forms completed by Dr. Pace stated that Chaulsett told her that the onset of his injury was "while on the job" and that it happened by an "uncertain mechanism." There is also a progress note contained in our record from "MyMercy Administrator" dated August 23, 2021. Contrary to the other documentation, this note states that Chaulsett's low back pain "began with a gradual onset while he was at work. No known injury."

An MRI was taken on August 30, 2021, and the report stated the following impression:

> IMPRESSION: Disc degeneration L4–5 and L5–S1. Central disc herniation with disc extrusion and possible free disc fragment at L4–5 resulting in severe canal stenosis. Mild broad disc protrusion L5–S1 with mild displacement of the passing right S1 nerve root.

Thereafter, Chaulsett was evaluated by Dr. Kainth on September 2, 2021. Dr. Kainth noted the following:

> [Chaulsett] presents for evaluation of his back pain and leg pain. He works for a grocery store delivery company and he is a driver and he helps to deliver groceries. He states that in July, while he was delivering groceries, he started developing worsening pain in his back and pain radiating down his right leg with sitting. Then roughly one to two weeks later, the pain worsened and he also developed left leg symptoms. He has had persistent lower back pain and pain radiating down his legs. The pain radiates in the L5 distribution, left side greater than right side. He also has

numbness in the right leg in the L5 distribution and also numbness in the left leg in the L5 distribution.

Dr. Kainth determined that Chaulsett was a surgical candidate and performed a L4–5 laminectomy, medial facetectomies, and microdiscectomy "to treat the underlying spinal canal stenosis and to remove the herniated disk fragment" on September 27, 2021. The surgery went well, and on December 2, 2021, Chaulsett was released back to work with certain restrictions. However, Chaulsett testified that he did not return to work with no work restrictions until December 22, 2021.

The ALJ filed a prehearing order on October 27, 2021. Chaulsett contended that he sustained a compensable injury to his lumbar spine on July 19, 2021; that he is entitled to temporary total-disability benefits and reasonably necessary medical treatment; and that he is entitled to an appropriate attorney's fee. Appellants contended that Chaulsett was not injured on the job and did not have a compensable injury.

A hearing was held before the ALJ on January 10, 2022. After the hearing, the ALJ filed an opinion on January 26, 2022, which made the following relevant findings:

> After reviewing the evidence in this case impartially, without giving the benefit of the doubt to either party, I find that claimant has met his burden of proof.
>
> Initially, I find that claimant has proven by a preponderance of the evidence that his injury arose out of and in the course of his employment with respondent and that it was caused by a specific incident, identifiable by time and place of occurrence. Here, as previously noted, claimant testified that he had made a stop for delivery and was getting back into his truck and as he sat down had immediate pain in his low back which radiated into his right leg. Claimant did report increased back pain to his supervisor. Claimant introduced into evidence a text message indicating that his lower back was "giving out" and that he would need to go to the chiropractor.

7

Claimant did go to the chiropractor, Dr. Alexander, on July 21, 2021 and for the first time claimant's low back, symptoms were rated as severe. In addition for the first time Dr. Alexander noted that claimant's symptoms were radiating into his right leg. Because of claimant's complaints, Dr. Alexander took claimant off work as the result of an "injury."

Medical records indicate that claimant again saw Dr. Alexander for low back complaints on July 23 and he sought treatment at the Mercy emergency room on July 24 for low back complaints.

On July 27, 2021, claimant was evaluated by Nurse Practitioner Pace who indicted that claimant reported his back giving out as he was getting into his semitruck. Pace diagnosed claimant with low back pain and prescribed medication, physical therapy, and referred him to pain management.

After receiving an additional evaluation with Dr. Pace and Robert Langston, another nurse practitioner, claimant eventually came under the care of Dr. Kainth, neurosurgeon, who on September 2, 2021 indicated that claimant's MRI scan revealed a disc herniation at the L4-5 level and he recommended a laminectomy and microdiscectomy which he performed on September 27, 2021.

Based upon the foregoing evidence, I find that claimant has met his burden of proving by a preponderance of the evidence that he suffered a compensable injury to his low back which arose out of and in the course of his employment with respondent and that it was the result of a specific incident, identifiable by time and place of occurrence.

I also find that claimant has offered objective findings establishing an injury and that his injury resulted in the need for medical treatment. As previously noted, Dr. Kainth indicated that claimant's MRI scan revealed a disc herniation at the L4-5 level and this resulted in surgery on September 27, 2021.

Based upon the foregoing evidence, I find that claimant has met his burden of proving by a preponderance of the evidence that he suffered a compensable injury to his lumbar spine on July 19, 2021. Respondent is liable for payment of all reasonable and necessary medical treatment provided in connection with claimant's lumbar spine injury.

I also find that claimant is entitled to temporary total disability benefits beginning July 21, 2021 and continuing through December 2, 2021. A claimant who suffers an unscheduled injury is entitled to temporary total disability benefits during

their healing period and while they remained totally incapacitated from earning wages. I find that claimant remained within his healing period and suffered a total incapacity to earn wages beginning July 21, 2021, the date he was taken off work by Dr. Alexander, and continuing through December 2, 2021. In a letter dated December 2, 2021, Dr. Kainth indicated that he had seen claimant in his office on November 29, 2021, and that claimant was capable of returning to work with restrictions. Although claimant testified that he was not released to return to work by Dr. Kainth until December 22, Dr. Kainth's letter of December 2, 2021 clearly indicates that claimant could return to work as of that date with work restrictions. There is no indication as to whether claimant attempted to return to work for respondent or any other employer as of that date. Nevertheless, I find that claimant is entitled to temporary total disability benefits beginning July 21, 2021 and continuing through December 2, 2021.

. . . .

Claimant has met his burden of proving by a preponderance of the evidence that he suffered a compensable injury to his low back on July 19, 2021. He is entitled to payment of all reasonable and necessary medical treatment provided in connection with his compensable lumbar injury. Claimant is entitled to temporary total disability benefits from July 21, 2021 through December 2, 2021.

Pursuant to A.C.A. § 11-9-715(a)(1)(B), claimant's attorney is entitled to an attorney fee in the amount of 25% of the compensation for indemnity benefits payable to the claimant. Thus, claimant's attorney is entitled to a 25% attorney fee based upon the indemnity benefits awarded. This fee is to be paid one-half by the carrier and one-half by the claimant. Also pursuant to A.C.A. § 11-9-715(a)(1)(B), an attorney fee is not awarded on medical benefits.

All sums herein accrued are payable in a lump sum and without discount.

Respondent is responsible for payment of the court reporter's charges for preparation of the hearing transcript in the amount of $384.90.

Appellants appealed the ALJ's decision, and on June 28, 2022, the Commission, in a 2–1 majority opinion, affirmed and adopted the ALJ's opinion as its own. This appeal followed. Under Arkansas law, the Commission is permitted to adopt the ALJ's opinion. *SSI, Inc. v. Cates*, 2009 Ark. App. 763, 350 S.W.3d 421. In so doing, the Commission makes

the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's opinion and the Commission's majority opinion. *Id.*

## II. *Standard of Review*

In appeals involving claims for workers' compensation, the appellate court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, 431 S.W.3d 858. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission. *Id.* Additionally, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony, and we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *Wilson v. Smurfit Stone Container*, 2009 Ark. App. 800, 373 S.W.3d 347 (2009). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Id.* Finally, this court will reverse the Commission's decision only if it is convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Prock, supra.*

III. *Specific-Incident Compensable Injury*

Appellants acknowledge that Arkansas Workers' Compensation law allows for two types of injuries, specific and gradual. Ark. Code Ann. § 11-9-102(4)(A)(i)–(ii) (Repl. 2012). Generally, a specific injury is an accidental injury arising out of the course and scope of employment caused by a specific incident identifiable by time and place of an occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i). A gradual injury is an injury arising out of the course and scope of employment that is *not* caused by a specific incident. Ark. Code Ann. § 11-9-102. A gradual injury has an added burden of proof, however, under section 11-9-102(4)(E)(ii), which includes that the resultant condition will be compensable only if the alleged compensable injury is determined to be the major cause of the disability.

Appellants argue that substantial evidence does not support the Commission's finding that Chaulsett suffered a specific-incident compensable injury on July 19, 2021. More specifically, they argue that Chaulsett did not assert that he injured his lumbar spine when entering his truck until the day of the hearing and that his contention was a "surprise." They therefore argue that Chaulsett's claim should have been considered a gradual injury based on the fact that he had preexisting back pain that he had been treated for during his employment. They further argue that Chaulsett's testimony at the hearing was purposeful and attempted "to distort the facts to fit a less stringent path to compensation." As such, appellants argue that Chaulsett's testimony was not credible and that he should have been barred from benefits. Appellants additionally argue that there "is no causal link [shown through medical evidence] between [Chaulsett's] action of sitting in a truck and the damage

11

later revealed to the claimant's back." They instead theorize that either previous heavy physical labor or the cough Chaulsett experienced on July 24, 2021, was, in fact, the cause of damage revealed in the MRI. They finally claim that the Commission ignored these arguments and evidence when it arrived at its decision to award benefits. We disagree.

To prove the occurrence of a specific-incident compensable injury, the claimant must establish that (1) an injury occurred arising out of and in the scope of employment; (2) the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) the injury is established by medical evidence supported by objective findings as defined in Arkansas Code Annotated section 11-9-102(16); and (4) the injury was caused by a specific incident and is identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i). Section 11-9-102(16) defines objective findings as findings that cannot come under the voluntary control of the patient. Moreover, the statute provides that neither complaints of pain nor range-of-motion tests shall be considered objective medical findings. *Id.* The claimant has the burden of proving these elements by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E).

An employer takes the employee as he finds him, and employment circumstances that aggravate preexisting conditions are compensable. *Vaughn v. Midland Sch. Dist.*, 2012 Ark. App. 344. A preexisting disease or infirmity does not disqualify a claim if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which workers'-compensation benefits are sought. *Id.* An aggravation is a new injury resulting from an independent incident, so it must meet the definition of a compensable

12

injury in order to establish compensability for the aggravation. *Liaromatis v. Baxter Cty. Reg'l Hosp.*, 95 Ark. App. 296, 236 S.W.3d 524 (2006). A compensable injury must be established by medical evidence supported by objective findings, which are findings that cannot come under the control of the patient, such as complaints of pain or tenderness. *See Ozark Nat. Food v. Pierson*, 2012 Ark. App. 133, 389 S.W.3d 105. As interpreted by our appellate courts, this means that an aggravation, being a new injury, must be evidenced by objective medical findings of a new injury to the preexisting condition. *Vaughn*, *supra*; *Mooney v. AT&T*, 2010 Ark. App. 600, 378 S.W.3d 162. It is the injury for which appellant seeks benefits that must be proved with objective medical findings. *Liaromatis*, *supra*.

Here, the Commission fully acknowledged the fact that Chaulsett had preexisting back pain and even discussed the previous medical records from Dr. Alexander in its opinion. However, as explained above, Chaulsett's preexisting back pain does not disqualify Chaulsett from claiming an aggravation or a new compensable injury resulting from an independent incident. Chaulsett claimed that he sustained a work-related injury on July 19, 2021, when he climbed into his vehicle and sat down. His injury was supported by objective medical findings. The records from the hospital indicated that spasms were present in his lumbar back, and a subsequent MRI gave the following impression:

> Disc degeneration L4–5 and L5–S1. Central disc herniation with disc extrusion and possible free disc fragment at L4–5 resulting in severe canal stenosis. Mild broad disc protrusion L5–S1 with mild displacement of the passing right S1 nerve root.

Although appellants argue that they were "surprised" by Chaulsett's testimony at the hearing that he sustained a work-related specific-incident injury and that such testimony

13

must be the result of Chaulsett's distorting the facts, the record evidence does not support their contention. Chaulsett introduced a text message indicating that he texted his supervisor on July 19, 2021, that his lower back was "giving out" and that he needed to go to the chiropractor. After that incident, Dr. Alexander's notes for the first time indicated that Chaulsett rated his low back symptoms as severe and that the symptoms were also radiating into his right leg. Moreover, Dr. Alexander took Chaulsett off work as a result of an "injury." Nurse Practitioner Pace further noted in her July 27, 2021, notes that Chaulsett reported that he felt his back give out as he was "getting up in semi-truck." She further noted that his condition was worsened by "[c]oughing, ambulation, bending, deep breathing, movement, lying down, sitting, sneezing, twisting, standing and stress." Finally, on the short-term-disability claim packet that Chaulsett completed and signed on July 29, 2021, he checked that he sustained a work-related injury and that the date of his first symptom occurred on July 19, 2021. He indicated that it occurred at "4 Star Diner," that his lower back started to hurt when he sat down, and that he intended to file for workers' compensation. With these facts, we cannot say that substantial evidence does not support the Commission's finding that Chaulsett's sustained a specific-incident injury to his lower back on July 19, 2021.

Further, contrary to appellants' argument on appeal, substantial evidence also supports the Commission's decision that the damage revealed in the MRI and the need for medical treatment was caused by the July 19, 2021, work-related incident. Although objective medical findings are required to establish the existence and extent of an injury,

objective medical findings are not required to establish causation. *Vaughn*, 2012 Ark. App. 344.; *City of El Dorado v. Smith*, 2017 Ark. App. 307, 521 S.W.3d 523. Causation often comes down to a decision on the credibility of the claimant; medical evidence on causation is not required in every case. *Vaughn, supra*; *Wal-Mart Stores, Inc. v. VanWagner*, 337 Ark. 443, 990 S.W.2d 522 (1999).

When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and determine the facts. *Wilson, supra.* Moreover, questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Prock, supra.* Here, although appellants suggest that Chaulsett's injury was caused by circumstances other than him climbing into his vehicle to sit on July 19, 2021, the Commission reconciled the conflicting evidence and found Chaulsett's testimony to be more credible. Further, other evidence found in the record supports causation. Chaulsett had not complained of pain that radiated into his leg until after that incident, and Dr. Alexander took him off work as a result of an "injury." The coughing incident did not happen until days later, and Chaulsett testified that after seeing Dr. Alexander for his new injury, his pain did not go away. Instead, he claimed that it had worsened and became "extreme" after he coughed on July 24, 2021. He went to the emergency room that same day. He explained that the pain he experienced on July 24, 2021, was the same type of pain and in the same location as it was since July 19, 2021, but that it was even more severe. Simply because the Commission weighed certain evidence more favorably in reconciling conflicting evidence does not mean that the Commission

15

disregarded the other evidence as appellants argue on appeal. Even if we might have weighed the evidence differently, on the basis of our standard of review, we cannot say that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. Thus, we affirm the Commission's decision.

Affirmed.

GRUBER and WOOD, JJ., agree.

*Zach Ryburn*, for appellants.

*Walker Law Group, PLC*, by: *Eddie H. Walker, Jr.*, for appellee.