Cite as 2024 Ark. App. 465

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-23-428

| | |
|---|---|
| INTERNATIONAL PAPER COMPANY<br>APPELLANT<br><br>V.<br><br>RONALD L. STEWARD<br>APPELLEE | Opinion Delivered October 2, 2024<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br><br>[NO. H109777]<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

International Paper Company (IPC) appeals the Arkansas Workers' Compensation Commission's determination that Ronald Steward proved the presence of a compensable injury and that he is not barred from receiving temporary total disability (TTD) and medical benefits due to false statements on his employment paperwork. We affirm.

I. *Relevant Facts*

Ronald Steward was hired by IPC in February 2021 and worked there until June 2021 as a general box worker. On June 3, Steward left work due to an injury that occurred at work the week before, around May 27. That day, Steward was performing his job duties inspecting and bundling boxes as they progressed down a conveyor belt. Steward explained that his job required him to rotate ninety degrees to the left to push the boxes, which he testified proceed "really fast. Sometimes it is going so fast that the boxes actually push each other, so you have

to be really fast." Steward stated that as he was pushing the boxes, he heard a "pop" sound and felt pain in his right upper front shoulder area. Steward finished his shift, and after the weekend, he returned to work. Steward worked Monday and Tuesday, but by his lunch break on Wednesday, he could not move his right arm, and he left work. Steward spoke with the human resources representative and filled out the paperwork for short-term disability. On June 7, Steward went to the Good Samaritan Clinic and was directed to take ibuprofen. On June 10, he was still in pain and not getting better, and an MRI was ordered. The MRI showed

> 1. Increased signal within the substance of proximal bicep tendon from the origin suggest a partial tear at origin of bicep tendon. Moderate fluid in the bicipital tendon sheath/ganglion. If further assessment is clinically desired, an arthrography may be of use. 2. Partial tear/tendinopathy supraspinatus tendon with mild hypotrophy acromioclavicular joint. 3. Thicken imperial pouch to shoulder joints with mild debris within the imperial pouch, and maybe due to arthritis.

After a few sessions of physical therapy, Steward was referred to orthopedist Dr. Stephen Smith, who diagnosed him with a bicep tendon tear. Steward testified that he told every physician he saw as well as his physical therapist that he was injured at work and felt a pop in his shoulder. Dr. Smith's records show that he noted Steward "works as a general box worker at International Paper Company, stacking and had increased pain in his right shoulder anteriorly where he complains of pain primarily, did not feel a pop, this happened on June 3." During the appointment, Dr. Smith injected Steward's bicep tendon sheath with Marcaine and betamethasone. Steward continued physical therapy and returned to see Dr. Smith on August 5, 2021, when he reported that he was better after the injection. Dr. Smith

put a fifteen-pound lifting restriction on Steward's right arm and continued with conservative care, although Dr. Smith did discuss repeating the bicep tendon injection or possible arthroscopic surgery. On August 31, 2021, Steward saw physician's assistant Patrick Walton, who determined that surgery was necessary to repair the bicep tendon tear. On September 29, 2021, Dr. Smith performed an open bicep tenodesis (reattaching the tendon to the bicep), and Steward was prescribed more physical therapy. On January 11, 2022, Dr. Smith ordered an additional three weeks of physical therapy and released him to return to work on February 1, 2022, without restrictions; however, Steward stated that he never received a call regarding the requirement that he see a physician selected by IPC, and he never followed up with IPC. Steward did not return to work.

In May 2019, before he worked for IPC, Steward was injured in a car accident that resulted in neck and back injuries. After the accident, Steward suffered numbness and tingling in his right arm and pain that radiated into both his left shoulder and his right shoulder and arm. The injury caused him to have muscle spasms, headaches, joint pain, and difficulty sleeping, working, and doing household chores. His symptoms became worse with movement. An MRI showed that Steward had disc protrusion and hypertrophy in his cervical spine and possible nerve contact at C-5 and C-6. Steward was diagnosed with cervicalgia; strain of the muscles, facia, and tendons at the shoulder and upper-arm level; right shoulder pain; and insomnia due to his medical condition. He was prescribed hydrocodone and received trigger-point injections. After physical therapy for Steward's neck and upper back, his pain was manageable. The physician's August 6, 2019 report provided that "due to the

3

injury he sustained and his continued symptoms, it is likely he would need further treatment in the future, but it is unlikely to fully recover." The physician's notes from his final appointment on October 23, 2019, state that "he may need trigger point injections or CESI's for future care." Steward testified that when he applied with IPC in 2021, he had no physical problems, was receiving no treatment related to his previous injury, and had not been under a doctor's care since October 2019.

In a post-hiring document, Steward denied that he had any previous injuries. Christopher Atkins, complex environmental health and safety manager for IPC, testified that after an employee is offered a position, but before beginning work, a health assessment is performed to ascertain what tasks the employee can perform. Atkins explained that IPC relies on employees to be honest about their accommodation needs so that the employee can be placed in a suitable position. On March 16, 2021, Steward filled out the "Post-Offer/Pre-Placement Health History" form. Steward denied that he had any of the various health issues listed on the form within the previous five years. The form included a question that asked whether Steward ever had or now had numbness or pain in his hands or neck pain, shoulder pain, arm pain, injury, or surgery. Steward responded on the form that he had not. At the hearing, Steward testified that he thought IPC wanted to know if he had any *current* issues or pain related an injury; thus, because he was not experiencing physical problems from the previous injury, he did not report his symptoms from 2019.

The administrative law judge's (ALJ's) opinion was entered October 6. In it, the ALJ found that Steward had proved by a preponderance of the evidence that he sustained a compensable gradual onset injury to his right bicep. Specifically, the ALJ determined that

> [c]laimant's testimony about when he felt the initial pop in his arm sounded like a specific incident injury, but given that he continued to work for several shifts after that incident and his condition deteriorated as he worked, I am satisfied that claimant met his burden of proof that the injury was caused by the rapid and repetitive nature of his duties.

The ALJ found that Steward was entitled to TTD beginning June 4, 2021, and continuing through January 31, 2022. The ALJ found that Steward was entitled to $23,508.36 in medical benefits. The ALJ determined that Steward intentionally lied on the post-hiring forms regarding his previous injury; however, the ALJ found that IPC did not prove that Steward was barred from receiving benefits due to these false statements because even though Steward was dishonest about his prior injury, the false statements were made *after* he was hired; thus, the false-representation defense in *Shippers Transport of Georgia v. Stepp*, 265 Ark. 365, 578 S.W.2d 232 (1979), does not apply here. The full Commission affirmed and adopted the ALJ's decision. IPC timely filed a notice of appeal, and this appeal followed.

## II. *Discussion*

### A. Standard of Review

When the Commission affirms and adopts the ALJ's opinion, thereby making the findings and conclusions of the ALJ the Commission's findings and conclusions, we consider both the ALJ's opinion and the Commission's opinion in our review. *Watson v. Highland*

*Pellets, LLC*, 2022 Ark. App. 132, 643 S.W.3d 267. This court views the evidence and all reasonable inferences deducible from it in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. *Jeter v. B.R. McGinty Mech.*, 62 Ark. App. 53, 55, 968 S.W.2d 645, 647 (1998). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue on appeal is not whether the court might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the court must affirm its decision. *Id.*

### B. Issues on Appeal

#### 1. *Rapid, repetitive motion*

IPC argues that because there is no "interval" testimony regarding the speed Steward worked, he did not prove that his work entailed rapid and repetitive motion. We disagree.

For an injury to be compensable under this theory, a claimant must prove by a preponderance of the evidence that (1) the injury arose out of and in the course of his or her employment; (2) the injury caused internal or external physical harm to the body that required medical services or resulted in disability or death; (3) the injury was caused by rapid, repetitive motion; and (4) the injury was a major cause of the disability or need for treatment. *Lay v. United Parcel Serv.*, 58 Ark. App. 35, 40, 944 S.W.2d 867, 870 (1997); Ark. Code Ann. § 11-9-102(4)(A)(ii)(a) (Supp. 2023). An injury must be established by medical evidence supported by objective findings. *Galloway v. Tyson Foods, Inc.*, 2010 Ark. App. 610, at 6, 378 S.W.3d 210, 214.

An injury is caused by a rapid, repetitive motion when, as the term naturally suggests, the task or tasks performed are repetitive, and the repetitive motion is done rapidly. *Id.* The Arkansas Supreme Court has held that multiple tasks involving different movements can be considered together to satisfy the repetitive element of rapid, repetitive motion. *See Hapney v. Rheem Mfg. Co.*, 342 Ark. 11, 26 S.W.3d 777 (2000). As a threshold issue, the tasks must be repetitive, or the rapidity element is not reached. *Galloway, supra.* This court has previously required some showing of how rapidly the repetitive actions were performed: "[i]n its ordinary usage, rapid means swift or quick." *Rudick v. Unifirst Corp.*, 60 Ark. App. 173, 176–77, 962 S.W.2d 819, 821 (1998) (internal citations omitted). Sometimes, a case provides very specific evidence regarding rapidity, for example, *Boyd v. Dana Corp.*, 62 Ark. App. 78, 966 S.W.2d 946 (1998), in which the employee's job involved rapid, repetitive motion when the job involved motions that were repeated 115 to 120 times a day separated by periods of only one and a half minutes. *See also Moody v. Addison Shoe Co.*, 104 Ark. App. 27, 29, 289 S.W.3d 115, 116 (2008) (factory worker making 1920 and 2160 individual shoes with gradual-onset shoulder injury was rapid, repetitive movement). Other times, as in *Pearson v. Worksource*, 2012 Ark. 406, 424 S.W.3d 311, there is less precise rapidity evidence. In *Pearson*, the claimant was required to cover bundles of steel as quickly as possible and had to walk fast from one end of a field to the other; thus, the only reasonable conclusion was that the fast-paced, repetitive walking caused a blister given the rapid motion of the claimant's ill-fitting boots rubbing against his toe.

IPC argues that the instant case is akin to *Lay v. United Parcel Service*, 58 Ark. App. 35, 944 S.W.2d 867 (1997), in which this court held that a series of motions performed once every eight minutes did not qualify as rapid, and if a claimant fails to present any evidence of the interval of the offending task, the burden of proving the rapid nature of the task is not met. IPC also cites *Pulaski County Special School District v. Stewart*, 2010 Ark. App. 487, 375 S.W.3d 758, in which this court reversed the Commission's decision that the claimant presented sufficient evidence of rapid, repetitive motion. In *PCSSD*, this court held that the evidence regarding the interval of the motion performed (the claimant testified she "opened and closed the bus door ten times in the morning and ten times in the afternoon—the equivalent to opening and closing the bus door five times per hour") was not evidence of rapid, repetitive motion. 2010 Ark. App. 487, at 5, 375 S.W.3d at 761. Both *Lay* and *PCSSD* are distinguishable because in those cases, there was evidence that the tasks, while performed at intervals, were *not* performed rapidly.

Here, Steward testified, "[S]o we pull the boxes to us. They are going really fast. Sometimes it's going so fast that the boxes actually push each other, so you have to be really fast." The ALJ found and the Commission affirmed that Steward's testimony that he performed the repetitive motion rapidly constitutes some evidence of rapid, repetitive motion under Ark. Code Ann. § 11-9-102(4)(A)(ii)(a). This court has declined to provide a comprehensive definition of what constitutes rapid, repetitive motion. *See Pearson, supra.* Viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the ALJ and the Commission, we hold that there is substantial

8

evidence to support the finding that Steward rapidly performed the repetitive motions required for his work.

### 2. *Causal connection between bicep tear and work*

On appeal, IPC argues that (1) two different statements from his treating surgeon and one statement from the physician's assistant confirm the injury was non-work-related; and (2) preexisting injuries "to the same area of his body, with pain radiating from his right shoulder into his right arm and hand" show a lack of causal connection. IPC also attacks Steward's credibility. IPC's arguments are not well taken, and we affirm.

When the primary injury is shown to have arisen out of and in the course of employment, the employer is responsible for any natural consequence that flows from that injury. *Nichols v. Omaha Sch. Dist.*, 2010 Ark. App. 194, at 5, 374 S.W.3d 148, 151. The burden is on the employee to establish by a preponderance of the evidence a causal connection between the injury and the consequences of such. *Id.* at 5–6, 374 S.W.3d at 151; *see* Ark. Code Ann. § 11-9-705(a)(3). Medical-opinion testimony is not essential to establish the causal relationship between the injury and a work-related accident, and nonmedical evidence may suffice to establish the causal relationship between an injury and the work-related accident. *See Kiswire Pine Bluff, Inc. v. Segars*, 2018 Ark. App. 296, 549 S.W.3d 410.

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Springfield Grocer Co. v. Chaulsett*, 2023

Ark. App. 53, 659 S.W.3d 731. The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Flynn v. J.B. Hunt Transp.*, 2012 Ark. App. 111, at 9, 389 S.W.3d 67, 71. The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Williams v. Ark. Dep't of Cmty. Corr.*, 2016 Ark. App. 427, 502 S.W.3d 530.

As Steward pointed out in his testimony, and as was noted in the ALJ's opinion and affirmed by the Commission, the same doctor who noted that the injury was not work related also made other notation mistakes, including misnaming the name of the company where Steward worked and the date of his injury. The postwork injury 2021 MRI showed that Steward's right bicep tendon was torn. Steward's injury in 2019 involved tendon and muscle *strain* to the upper right arm, and a contemporaneous MRI did not show that his bicep was torn in the accident. The court found credible Steward's testimony that he told each doctor and care provider that he had been injured at work. As we stated above, the credibility of the witnesses is the province of the fact-finder. *See Springfield*, *supra*. Considering our standard of review, we hold that fair-minded persons with the same facts before them could have reached the conclusion that Steward proved by a preponderance of the evidence his injury was work related; thus, we affirm the Commission's decision.

### 3. Shippers *defense*

IPC asserts that Steward's claim is barred because he made false statements on the Post-Offer/Pre-Placement Health History form regarding his previous injury and related

10

symptoms. IPC contends that the "spirit" of the *Shippers* defense applies under the facts of the instant case. We disagree.

In *Shippers*, 265 Ark. at 369, 578 S.W.2d at 234, our supreme court held that

a false representation as to a physical condition in procuring employment will preclude the benefits of the Workmen's Compensation Act for an otherwise compensable injury if it is shown that the employee knowingly and willfully made a false representation as to his physical condition, the employer relied upon the false representation, which reliance was a substantial factor in the employment, and there was a causal connection between the false representation and the injury.

All three of the factors must be present to bar compensation; if any of the three factors is absent, then the employee is entitled to compensation. *Id.* at 370, 578 S.W.2d at 234. In the instant case, the Commission determined that IPC failed to prove by a preponderance of the evidence the second and third elements of the *Shippers* defense: that IP relied on Steward's false statements in *hiring* him (because the statements were made in post-hiring documents) and that there is a causal connection between the false representation and the injury (because the medical evidence does not show that Steward had an injury to his right bicep that was affected by the prior automobile accident.) Focusing on the second factor, we affirm. Steward testified, and IPC's health and safety manager confirmed, that the documents containing Steward's false statements were created after Steward accepted IPC's employment offer. The *Shippers* defense requires that the false statements were relied on in hiring, and Steward did not make the false statements until after he was hired. We hold that the Commission did not err in finding that the *Shippers* defense does not apply under these circumstances.

11

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *John P. Talbot* and *Grace W. Fletcher*, for appellants.

One brief only.